Tullock v. Webster County.

ALONZO J. TULLOCK v. WEBSTER COUNTY.

FILED OCTOBER 15, 1895.   No. 3148.

1. **Bridges: COUNTIES.** Prior to the enactment of chapter 72, Session Laws, 1887, a county under township organization was not invested with the power nor charged with the duty of building or repairing bridges situate in the county. (*Whitcomb v. Reed*, 24 Neb., 50.)

2. ——: ——. By the enactment of said chapter 72 it was not intended to make counties under township organization liable for the payment of bridges already constructed, nor for the payment of repairs made on bridges prior to the taking effect of said act.

3. **Action Against County to Recover for Labor and Material Furnished Under Bridge Contract: PLEADING: ULTRA VIRES.** A petition filed in a suit against a county to recover for labor and material of the value of more than $100 furnished in 1887 towards the construction of a bridge in pursuance of a contract between the plaintiff and the county board of such county did not allege that the bridge constructed was situate in the county ; nor that at the time the contract was made there was on hand money available for the purpose of paying for such labor and material, as provided by section 83, chapter 78, Compiled Statutes, 1887 ; nor that the county authorities advertised for bids for the furnishing of the labor and material sued for.   *Held*, (1) That the petition did not state a cause of action; (2) that these facts must have existed as a condition precedent to invest the county board of said county with jurisdiction to make the contract sued on; (3) that as such facts did not exist, the contract made was *ultra vires* and void and incapable of ratification by the county.   *Townsend v. Holt County*, 40 Neb., 852, and *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla*, 40 Neb., 775, followed and reaffirmed.

ERROR from the district court of Webster county. Tried below before GASLIN, J.

See opinion for statement of the case.

*O. P. Mason* filed a brief on behalf of plaintiff in error wherein the following points appear:

Municipal corporations have the power to enter into contracts by committees on behalf of the proper officers. (*Hitchcock v. Galveston*, 96 U. S., 348.)

Municipal corporations may ratify unauthorized expenditures which they deem beneficial, and such ratification is equivalent to previous authority. (Dillon, Municipal Corporations, sec. 463; *People v. Swift*, 31 Cal., 26; *Kimball v. School District*, 8 Vt., 8.)

Even if there be a defect of power in a corporation to make a contract, yet if the contract was not in violation of its charter or of any statute prohibiting the contract, and the corporation had induced a party who relied on the contract to expend money in the performance of the same on his part, the corporation will be liable. (*City of East St. Louis v. East St. Louis Gas Light & Coke Co.*, 98 Ill., 415; *State Board of Agriculture v. Citizens Street R. Co.*, 47 Ind., 407.)

The plaintiff in error having entered into the contract in good faith, and performed the services, relying upon the regularity of the proceedings of the county board, the county, having received the benefit of the performance, is estopped from questioning the regularity in that regard. (*Moore v. Mayor of New York City*, 73 N. Y., 238.)

Where a corporation has purchased chattel property and the property is delivered to it, and all things are completed except the performance of its own promise to pay the price, a plea cannot be entertained that it had no authority to make the purchase, or enter into the contract, so long as it retains and insists on retaining the benefits of the con-

tract. (*Parish v. Wheeler*, 22 N. Y., 494; *Rutland R. Co. v. Proctor*, 29 Vt., 93; *Pittsburgh, C. & St. L. R. Co. v. Keokuk & Hamilton Bridge Co.*, 131 U. S., 381; *Bank of Columbia v. Patterson*, 7 Cranch [U. S.], 299; *Bank of United States v. Dandridge*, 12 Wheat. [U. S.], 64; *Zabriskie v. Cleveland*, 23 How. [U. S.], 381; *Gold Mining Co. v. National Bank*, 96 U. S., 640; *Pneumatic Gas Co. v. Berry*, 113 U. S., 322.)

It is sufficient that the corporation has made the contract, and by so doing has placed in its corporate treasury the fruits of other's labor, and every friend of justice forbids that it should be permitted to evade payment by an appeal to the limitations upon its manner of doing business. (*Bradley v. Ballard*, 55 Ill., 413; *Darst v. Gale*, 83 Ill., 136; *Poock v. La Fayette Building Association*, 71 Ind., 357; *Hayes v. Gallion Gas Co.*, 29 O. St., 340; *Wright v. Pipe Line Co.*, 101 Pa. St., 204; *Union Nat. Bank v. Hunt*, 7 Mo. App., 42.)

While courts are inclined to maintain with vigor the limitations of corporate action, whenever it is a question of restraining the corporation in advance from passing beyond the powers of its charter, they are equally inclined, on the other hand, to enforce against them contracts, though *ultra vires*, by which they have received the benefit. (*Bissell v. Michigan S. & N. J. R. Co.*, 22 N. Y., 258; *Parish v. Wheeler*, 22 N. Y., 494; *Argenti v. City of San Francisco*, 16 Cal., 256; *Hale v. Mutual Fire Ins. Co.*, 32 N. H., 297; *Railroad Co. v. Howard*, 7 Wall. [U. S.], 413.)

*J. N. Rickards*, also for plaintiff in error.

*J. R. Wilcox, J. S. Gilham*, and *Case & McNeny*, contra, cited: *School District v. School District*, 12 Neb., 242; *Driftwood Valley Turnpike Co. v. Board of Commissioners of Bartholomew County*, 72 Ind., 226; *Cummins v. City of Seymour*, 79 Ind., 497; *State v. Messenger*, 25 Neb., 674; *Sovereign v. State*, 7 Neb., 410; *Smails v. White*, 4 Neb., 357.

RAGAN, C.

Alonzo J. Tullock sued Webster county in the district court thereof, which sustained a demurrer to Tullock's petition. He refused to plead further, whereupon the court entered a judgment dismissing his action, to reverse which he has prosecuted here a petition in error.

The allegations of Tullock's petition necessary to an understanding of the points made here are in substance that on the 16th day of June, 1887, Tullock entered into a contract in writing with Joseph Garber, Alfred McCall, and Reese Thompson, "bridge committee for and in behalf of said Webster county." By the terms of the contract Tullock agreed to furnish the material and labor and construct a bridge for the bridge committee over the Republican river south of Red Cloud and have the same completed by the 1st day of November, 1887. The petition then alleged that Tullock fully performed his contract before the date last mentioned and that "*during the execution* of said contract the said defendant, Webster county, directed and required and then and there consented and agreed to pay the said plaintiff for the extra work and material hereinafter more particularly set forth, viz.: That after Tullock had excavated the bed of the river to the first stratum of rock, for the purpose of building the north pier of said bridge according to the plans and specifications made a part of the contract, that Tullock was requested and required by Webster county to make said excavation to the second stratum of rock; that he did so; that Webster county then and there agreed to pay Tullock for the extra work and material required to carry the pier to the second stratum of rock; that said extra labor and material were of the value of $942.20."

Webster county during the entire year of 1887 was under township organization, and at the time the contract for this bridge was entered into by the "bridge committee"

and Tullock, the county was not invested with the power nor charged with the duty of building or repairing bridges in the county. (See *Whitcomb v. Reed*, 24 Neb., 50, where all the statutes bearing on the subject of the duties and liabilities of counties under township organization for the erection and reparation of bridges in the county were examined, and the conclusion stated above reached.) But the legislature, on the 24th day of March, 1887, passed an act (Session Laws, 1887, p. 587, ch. 72) which provided:

"Sec. 1. That in counties under township organization the expense of building, maintaining, and repairing bridges on public roads over streams shall be borne exclusively by the counties within which such bridges are located.

"Sec. 2. The county board of every such county shall build, maintain, and repair every such bridge, and make prompt and adequate provision for the payment of the expense thereof."

The legislature of 1887 adjourned on the 31st day of March of that year, consequently this law did not take effect before the 1st day of July of that year, and there is no allegation in the petition as to the date when Webster county contracted with Tullock to furnish the extra labor and material, nor is there any allegation in the petition showing when he furnished such extra labor and material. The allegation is that the labor and material were furnished at the request of Webster county during the time that Tullock was constructing the bridge; that is, some time between the 16th day of June, 1887, and the time of the completion of the work. This is too indefinite. We cannot presume from this language that the county contracted for nor that Tullock furnished the extra labor and material subsequent to the 1st of July, 1887. The legislature did not intend by the act just quoted to make counties under township organization liable for the payment for bridges already constructed; nor for the payment of repairs made on bridges, which repairs had been made prior to the pas-

sage of the act. The obvious purpose of the act was to put the burden upon the counties instead of the townships, of building and repairing such bridges as might become necessary in the county after the taking effect of the act. But this statute must be construed in connection with sections 83 and 84 of the said chapter 78, Compiled Statutes, 1887, which provided: "All contracts for the erection and reparation of bridges and approaches thereto, for the building of culverts, and improvements on roads, the cost or expense of which shall exceed one hundred dollars, shall be let by the county commissioners to the lowest competent bidder; but no contract shall be entered into for a greater sum than the amount of money on hand in the county road fund derived from the levy of previous years, and two-thirds of the levy for the current year, together with the amount of money in the district road fund of the district where such work is to be performed." Section 84: "Before any contracts, as aforesaid, shall be let, the county commissioners shall advertise for bids therefor," etc.

The petition does not allege that the bridge built by Tullock, and towards the construction of which the extra labor and material sued for were furnished, was in Webster county. It appears from the petition that the value of the extra labor and material was more than $100; but the petition does not allege that the supervisors of Webster county, before they let the contract to Tullock to build this bridge or to furnish the extra material and labor therefor, advertised for bids; nor does it allege that the amount of money on hand in the county road fund derived from the levy of previous years and two-thirds of the levy for the current year, 1887, together with the amount of money in the district road fund of the district where such bridge was situate was equal to the amount agreed to be paid for such extra labor and material; nor does the petition allege that Tullock was the lowest competent bidder. If the act of March 24, 1887, quoted above, had been in force at the

time Tullock contracted with Webster county to furnish the extra labor and material, still the petition would not state a cause of action because of the absence therefrom of the several matters just enumerated. The advertisements for bids, the fact that the bridge to be built was in Webster county, and the fact that there was on hand money available for the purpose of building and paying for said extra labor and material as provided by said section 83, were facts which must have existed to invest Webster county, or its proper authorities, with jurisdiction to enter into any valid contract for furnishing the labor and material made the subject-matter of this suit. In *Townsend v. Holt County*, 40 Neb., 852, Holt county, through its board of supervisors, duly entered into a written contract with Townsend, in and by which the latter agreed to furnish the material and erect a bridge over the Niobrara river. It appears that the board of supervisors appointed a building committee to supervise the construction of the bridge on behalf of the county. After the contract was made this building committee authorized Townsend to depart from the original plans and specifications for the bridge and to build it higher than Townsend was required to do by his written contract. Townsend made the alterations at an expense of $500. He then sued the county for the value of this extra labor and material. A general demurrer was sustained to his petition and he prosecuted a petition in error here, but the court held: "Under the provisions of section 83, chapter 78, Compiled Statutes, an increase of $500 from the contract price for the erection of a bridge cannot be enforced when such increase was contracted for without bids being required or made in respect thereto." We conclude, therefore, that Webster county, by its proper authorities, had no jurisdiction or authority of law to enter into a contract with Tullock to furnish extra labor and material—the cost of which exceeded $100—towards the erection of the bridge built by Tullock, without there being on hand funds as above stated

and without first having advertised for bids for such extra labor and material. But it is argued here that Webster county, by accepting the bridge and paying Tullock the original contract price thereof, thereby ratified the illegal and unauthorized act of its board of supervisors in contracting with Tullock for the extra labor and material.

The question of the power of a municipal corporation to ratify the invalid contracts of its officers was before this court in *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla,* 40 Neb., 775. The provision of the statute (Compiled Statutes, sec. 89, ch. 14,) entitled "Cities of the Second Class and Villages" is as follows: "No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided." It appears that the trustees of the village of Ogalalla, or some of them, purchased of the manufacturing company certain hose, hose-carts, reels and ladders, and that the articles purchased were accepted and used by the village; but it further appears that no appropriation for the purpose of purchasing and paying for these articles had previously been made. The village having refused to pay for the fire apparatus, the manufacturing company sued it, and it was argued in this court that the village could not repudiate its contract after having received the benefits thereof; in other words, that by accepting the fire apparatus and using it, the village had thereby ratified the unauthorized contract of its officers in purchasing the apparatus. The court said: "The cases bearing upon the question of the power of municipal corporations to ratify their unauthorized contracts are confusing and apparently irreconcilable. It would subserve no useful purpose to

examine them at length in this connection or to attempt a statement of the grounds upon which they rest. It is sufficient that there is one principle which seems to run through them all, viz.: If a contract is invalid when made, because in violation of some mandatory requirement of statute, it will be deemed *ultra vires*, and can be ratified only upon the conditions essential to a valid agreement in the first instance; but where the formalities prescribed or conditions imposed are not intended as a restriction upon the corporate power, a binding ratification may be made in a different mode. * * * It is plain that the statute under consideration is mandatory and an express limitation upon the powers of cities and villages of the class to which it applies." It was accordingly held that the village was not liable for the apparatus purchased by its officers because no appropriation of money for that purpose had previously been made. This case disposes of the argument made here that Webster county had ratified the unauthorized act of its board of supervisors in contracting with Tullock to furnish the extra labor and material sued for. The authorities of Webster county had no jurisdiction or authority to make this contract without first having advertised for bids therefor and without there being on hand the moneys specified in said section 83, chapter 78, Compiled Statutes, quoted above. The contract, therefore, of the supervisors was not voidable or capable of ratification, but absolutely null and void and incapable of ratification. The judgment of the district court is

AFFIRMED.