MARION WATER COMPANY, Appellant, v. CITY OF MARION,
Appellee.

**Construction of Waterworks:** VOTE OF COUNCIL: COMPLIANCE
1   WITH STATUTE. The unanimous vote of the members of a
city council in favor of closing a contract with an individual
on the terms proposed for the construction of a waterworks
system, is a compliance with section 471 of the Code of 1873,
which authorized the erection thereof upon either a vote of
the people or four-fifths of the council.

**Authority of Mayor to Contract for Waterworks.** The resolution
2   of a city council to close a contract for the erection of water-
works does not amount to the making of a contract nor does it
authorize the mayor to enter into a written contract with an
individual therefor.

**Unauthorized Contract by Mayor:** RATIFICATION. The fact that
3   a mayor after executing a contract for the construction of
waterworks without authority reports his doings to the council,
which is received without action, does not ratify his unauth-
orized act.

**Ordinances:** PASSAGE: REQUISITE VOTES. Where eight of the
4   nine councilmen, including the mayor, are present and unan-
imously vote in favor of the passage of an ordinance, it re-
ceives the number of votes necessary to its legal adoption,
under section 489 of the Code of 1873.

**Passage of Ordinance:** YEA AND NAY VOTE. Where the record dis-
5   closes who, of the council, were present, that the roll was
called and all voted in the affirmative on the passage of an
ordinance, there is a compliance with the statute requiring a
record of the yea and nay vote.

**Ordinances:** VALIDITY: POWER NOT EXPRESSED IN TITLE. An or-
6   dinance, the title of which is to enable a waterworks company
to lay mains and condemn private property, which not only
grants such rights but also provides for hydrant rentals, annual
levy of a special tax, collection of rents from private consum-
ers and for the purchase of the works by the city, is invalid
as containing more than one subject which is not expressed in
the title.

**Collection of Water Rents:** INVALIDITY OF ORDINANCE: ESTOPPEL.
7   Where a city having power adopts an ordinance, though void

because embracing subjects not expressed in the title, authorizing the construction of waterworks and providing for payment by the city of hydrant rentals, the conditions of which are accepted and acted upon in full faith that the ordinance is valid and the same is so treated by the city, the collection of hydrant rentals actually due cannot be defeated by the city on the ground of the invalidity of the ordinance.

**Ratification of Invalid Contract:** ESTOPPEL. Where a contractual relation exists between a city and a waterworks company created under an invalid ordinance, and subsequently the ordinance is revised and reenacted and a curative act is passed by the legislature at the instance of the city, the same is ratified and the city cannot thereafter deny a liability arising under the void ordinance.

**Payment of Water Rent:** SPECIAL ASSESSMENT. Where a city contracts to pay a stipulated water rental it is liable for the payment of the full amount, although in excess of the sum realized from a special assessment authorized for that purpose.

**Liability of City for Water Rent:** ESTOPPEL. Where a city consents to a transfer by the owner of a waterworks system constructed pursuant to the ordinance and contract of the city, accepts the service of the transferee in supplying water and pays in part therefor, it is estopped to deny its liability for the balance due as water rental.

**Account:** APPLICATION OF PAYMENTS: LIMITATION. Where an account against a city includes debit items for water rentals covering a period of over eleven years and partial payments are made at various times, with no direction as to their application, the payments will be applied to the discharge of the items in the order in which they accrued, and if by so doing the balance of the account accrued within five years from the commencement of the action, no part of it is barred.

*Appeal from Linn District Court.*—HON. W. N. TREICHLER, Judge.

THURSDAY, OCTOBER 15, 1903.

THE defendant is a city in this state, of the second class. The plaintiff is a corporation organized under the laws of this state, and engaged in maintaining and operating a system of waterworks in said city, supplying the city

with water for public purposes, and private consumers for
domestic and other purposes.    This action is brought
against the defendant city to recover an amount alleged
to be due as a balance for public water service rendered.
The facts involved are not seriously in dispute.    These
may be regarded as fully established:   In the year 1885 a
movement was started in Marion, then as now a city of
the second class, the purpose being to secure a system of
waterworks.    In April of that year one J. W. Starr, ac-
companied by a citizen's committee, went before the city
council while in session, and submitted a written propo-
sition, in accordance with which, if accepted and a con-
tract entered into, he would undertake to erect and put in
a system of waterworks.    We notice here only such pro-
visions of the writing as we deem material to the ques-
tions presented for our determination.    The character and
capacity of the proposed plant are described.    Included
therein is a provision for five and one-half miles of distri-
buting mains, which are to be laid in such streets, etc., as
the city council may designate.    To these mains are to be
connected fifty hydrants, to be placed at such points as
the city council may designate.    Provision is made for the
extension of mains upon petition therefor by property
owners, or for fire purposes only; in the latter case it being
conditioned that the city council shall locate six hydrants
to the mile of such extensions.    After providing in detail
for the service to be rendered, it is said that payment
therefor shall be made by the city as follows:   For the
fifty hydrants first put in, the sum of $3,000 per annum;
for additional hydrants set, $30 each per annum—payments
to be made to the Fidelity Insurance, Safe Deposit & Trust
Company of Philadelphia.    It is then provided that "a
special tax shall annually be levied to pay said public
rental, and said tax when collected shall be held inviolate
for the payment of said public rentals of hydrants, and
paid to the parties as above provided.    Said special tax

shall be collected and paid over, as above set forth, on the first day of June and December of each and every year. * * * That the annual rental shall commence from the date water service begins." After some other clauses, it is then provided that the city, as far as authorized by law, shall grant the exclusive right to streets, and pass all needful ordinances to enable the party building or owning the works to maintain and operate the same for the period of twenty-five years. Provision is then made for purchase of the plant by the city, at its option, upon the expiration of the period named.

The citizens' committee recommended that the council enter into the proposed contract. A member of the council moved "that the council at once close the contract with Mr. Starr. Carried unanimously." It appears that a committee was then appointed by the mayor to meet with Starr the next morning. No report of such committee was made, but at a council meeting held on the following day the mayor reported that the contract for waterworks had been duly executed with Starr. On the face of the contract it is signed by Starr, and by "E. L. Sampson, Mayor of the City of Marion. Attest: J. B. McKean, City Clerk." The corporate seal of the city is also attached. It is conceded that the matter of a franchise to, or contract with, any corporation or individual for the erection and maintenance of a system of waterworks was never submitted to a vote of the electors of the city. It is also conceded that at all times in question the city council was composed of the mayor and eight aldermen. It appears that in May following a corporation was organized under the general law of this state, taking the name of the City of Marion Waterworks Company. The purpose of such corporation, as stated in its articles, was to construct and maintain a system of waterworks in the city of Marion, to supply water for public and private uses. To this corporation Starr transferred and assigned all his rights and interest

in the premises, and this transfer was approved by the
city council by a resolution adopted May 20, 1885.     In
June thereafter, at a meeting of the city council, an ord-
inance was introduced, the material portions thereof being
as follows:  Section 1 grants to the City of Marion Water-
works Company the right to lay water pipes in the city
streets, etc., to supply the city and its 'inhabitants with
water, and all in accordance with the contract entered
into between the city and J. W. Starr, reference to which
and the record thereof is made.     Section 2 grants powers
of eminent domain to the extent the city is authorized so
to do.    Section 6 provides for payment to the company by
the city for hydrant rentals identical in the amount and at
the times specified in the Starr proposition.    Section 7 is
as follows:   "For the purpose of providing the necessary
funds to pay the annual rentals herein provided for, the
city council shall at the regular time of levying taxes in
each year to be made, levy, and cause to be collected, a
special tax, as provided for under section 475 of the Code
of Iowa, 1873; and if the amount collected in this manner
and with limitation provided for in section 475 of the
Code of Iowa, 873, shall be insufficient to pay the annual
rental for any one year, then any deficiency remaining
unprovided for, after exhausting said special tax, shall be
paid by the city of Marion from the general funds of said
city at the time said rental shall be due, and the said
special tax when collected, shall be held inviolate and
used for said annual rental only; and no part of the same
shall at any time be used for any other purpose whatever.
The limits within which the special levy, herein provided
for, shall be made on the taxable property of the city,
shall be fixed by the city council each year before levy is
made."    The following in reference to said ordinance ap-
pears in the minutes of said meeting:   "Council met in
regular session, his honor the mayor and all the council-
men present except Braska. The waterworks ordinance, as

reported by the city attorney, was then read. Councilman Wood then moved to proceed to pass the ordinance as read. Carried unanimously. Councilman Mentzer moved to waive second and third readings, and on roll call motion prevailed unanimously. Alderman Wood then moved the ordinance on its passage. On roll call carried unanimously. J. B. McKean, City Clerk."

Thereafter the waterworks company installed and put in operation a system of waterworks, and on October 31, 1887, at a meeting of the city council all members being present, there was introduced a report of a committee of the council on waterworks reciting, in substance, that the system had been in use for several months, giving general satisfaction, and recommending that the same be accepted, and that payment of the hydrant rentals on the fifty hydrants set, be made at the rate of $60 each per annum. The minutes of the meeting shows: "Alderman Mentzer moved the adoption of the report. Seconded by Daniels. On roll call, unanimous." In the year 1895 the city council attempted a revision of the ordinances of the city. In connection therewith, it appears from the minutes of the council meetings that on January 7, 1895, Ordinance No. 24 was introduced and read. January 15, 1895, said ordinance was read a second time. On March 11, 1895, the council met to consider ordinances, and there were present the mayor and six aldermen. It was moved that "the council proceed to pass Ordinances Nos. 24, 25, 26, and 27 on their third reading and passage. On completion of the reading of the same, on adoption, the ayes were [naming the six aldermen]." Ordinance No. 24 is entitled "An ordinance to authorize, permit and enable the Marion Waterworks Company to lay its mains and necessary pipes under the streets, alleys and public places within the limits of the city of Marion, and condemn private property for the construction and operation of its works." Section 1 to 9 thereof, inclusive, are iden-

tical with the corresponding sections of the ordinance of 1885. In addition thereto is a section making it unlawful for any unauthorized person to have tools, etc., of the water company in possession, and making it the duty of certain city officers to collect such tools, and return the same to the water company; a section making it unlawful for any person to use water in violation of the rules of the company, and giving the company the right in such cases to cut off from such person all water connection, etc.; a section providing that a violation of any of the provisions of the ordinance shall be a misdemeanor, and punished by fine or imprisonment, etc.

It appears that at the time of installing its plant the waterworks company executed a mortgage to the Fidelity Insurance, Trust & Safe Deposit Company, as trustee, covering the entire plant, including the franchise and contract with the city, and all rents, incomes, etc., to secure a bonded indebtedness in the sum of $70,000. The company failing to make payments of principal and interest as stipulated, foreclosure proceedings on said mortgage were commenced, under which a receiver was appointed, who took charge of the plant. There was a decree of foreclosure, and thereafter the entire property, including the balance due and unpaid and to become due for hydrant rentals, was sold under execution to said Fidelity Company. A sheriff's deed issued September 4, 1895. Persons interested in the waterworks company thereupon organized and procured to be incorporated the plaintiff company. September 21, 1895, the Fidelity Company sold and conveyed by deed said plant in its entirety, including all accounts due, etc., to plaintiff, and plaintiff has since continued to operate the same. Each year since said system was put in operation the city has levied a five-mill tax to create a fund for water purposes. From time to time city warrants have been drawn by order of the city council in payment of hydrant rentals, and the same turned over to the

waterworks company, to the receiver, and to the palintiff, as each successively operated and controlled the plant. It is further made to appear that in 1896 a corporation was organized, known as the Marion Improvement Company, having for its object the installation of a plant to furnish heat, light, power, etc., for public and private use in the city of Marion; that this company has bought up and now owns a majority of stock in the plaintiff company. The Improvement Company requested of the city council sanction of the transfer to it of the plant of the plaintiff company, and on March 25, 1896, a resolution was adopted by the council, by unanimous vote, consenting to and confirming such transfer. The contract with Starr is mentioned in terms in said resolution.

Attached to the petition is a statement of account for hydrant rentals beginning with an item dated December 1, 1889, and ending with an item dated December 1, 1900, and showing credits from time to time for warrants received. The balance due as shown by the account is $8,385.82, and for this sum judgment is demanded. The matters of defense set up, and such further matters of fact as are material, will be found stated in the opinion. There was a trial to the court, a jury being waived, resulting in a judgment in favor of defendant. The plaintiff appeals. — *Reversed.*

*Jamison & Smyth* and *Fitzgerald & Varner* for appellant.

*Voris & Haas, C. J. Haas,* and *Cook & Loomis* for appellee.

BISHOP, C. J.—The fact that full and satisfactory service as alleged, was rendered by plaintiff, and those whom it succeeds, during the entire period in controversy, is not disputed. There are presented substantially four grounds of defense. These are: (1) That the contract under

which plaintiff and those whom it succeeds performed the service in question was never legally executed or authorized, and is in no manner binding upon the city; that all ordinances of the defendant city, so far as they purport to grant the water company any rights, are invalid, never having been legally· adopted.    (2)    That, even if the original contract were valid, yet under the terms thereof the water company was entitled only to the proceeds of a five mill levy on the taxable property of the city subject thereto, and that all such sums have been paid.    (3) That the alleged contract for water supply, even if valid, was made and entered into with a person or company other than the plaintiff, and such contract is not assignable without the consent of the city, and plaintiff can assert no rights thereunder.    (4) That a part of plaintiff's demand is barred by the statute of limitations.    We may consider these several contentions in the order stated.

I.    In connection with the first ground of defense, our attention is called to section 471, Code 1873, and it is insisted that there was an entire failure to comply there-

1. CONSTRUC-    with on the part of the defendant city.    The
TION of water-    section referred to has relation to the powers
works: vote of
council: com-    of cities and towns, and provides that "they
pliance with
statute.    shall have power to erect waterworks, or to authorize the erection of the same, but no such works shall be erected or authorized until a majority of the voters of the city or town at a general or special election or four-fifths of the members of the council by vote approve of the same."    Giving to this statutory provision full force, still be are unable to agree with the contention of appellee.    The record discloses this to be the situation: Starr, backed up by a committee of citizens, was before the council asking that he be given a franchise to put in a system of waterworks, and in a writing which he presented he set forth the exact terms and conditions upon which he was willing to accept a franchise and put in· the

system. All this appears in the official minutes of the meeting. Now, having the statute in mind, it is plain that, if the council chose to act at all in the premises, two courses were open to it—it might by vote approve or reject the plan proposed, the affirmative votes of four-fifths in number of the members of the council being necessary to an approval; or it might provide by resolution, a bare majority vote only being necessary thereto, for a submission of the question of authorization to a vote of the electors of the city for their approval or rejection. The purpose of the statute, as we understand it, was to forbid any steps being taken looking to the erection of a system of waterworks, whether by the city itself or by a private person or corporation, until a majority of the voters of the city, or four-fifths in number of the members of the city council, had by vote declared in favor thereof. Whatever may be the rule at the present time, no one will contend that under the provisions of the statute in question it would be necessary to submit to a vote of the electors anything more than the simple question, shall the erection of a system in accordance with the plan proposed be authorized? And the question would be the same if put to a vote of the members of the council. In the present instance the question was put to a vote of the council, all members being present, and all voted in the affirmative. Such fully appears from the official minutes of the meeting. It would be easy to say that the question as put does not correspond in form to the question as above suggested by us. But it would be difficult to point out wherein there is any material difference as to subject-matter or effect. The council by unanimous vote put itself upon record as in favor of granting to Starr the right to establish waterworks upon the terms and conditions presented by him. This alone was essential to work a compliance with the statutory provision. We must assume that the members of the council were familiar with the statute,

and we think it fair to assume that the vote taken as shown was for the purpose of making a record to stand as evidence that the law had been complied with.

We readily agree with counsel for appellee that what was done at the initial meeting of the council did not amount to the making of a contract; nor do we think the

2. AUTHORITY of mayor to contract for waterworks.

proceedings had can be construed into a warrant of authority to the mayor and recorder to proceed to the execution of a formal written contract. This conclusion arises readily from the mere reading of the record of the proceedings. It was voted simply that the council at once enter into contract relations with Starr, and no other action on the part of the council appears. The appointment of a committee to meet with Starr the following morning was not pursuant to any vote of the council, but was done by the mayor on his own motion. Moreover, had it been the purpose to authorize the execution of a contract writing by the vote taken, the yeas and nays should have been called and recorded. Section 493, Code 1873.

Giving consideration to the things done as of the time when done, it is clear that the action of the mayor and recorder in affixing their official signatures to the proposed

3. UNAUTHOR- IZED contract of mayor: ratification.

contract was without authority, and, at the time at least, subject to repudiation. Nor did the report made by the mayor to the council on the following day, and which was received in silence, have the effect, in and of itself, to cure the irregularity, and give life to the writing as a valid contract. As we have seen, this could be done only by an appropriate motion or resolution, the vote on which was taken by yeas and nays and recorded. It is evident, however, that the council in point of fact accepted such action on the part of the mayor and recorder as sufficient to invest the writing with the necessary legal attributes of a contract. What would have been the rights of the respective parties, had

Starr proceeded to put in the system and operate the same solely under the provisions of the supposed contract, for reasons which will hereinafter appear, we are not called upon to determine.  Within a few days Starr assigned all his right to the waterworks company, and this was approved by unanimous vote of council.  Thereupon the ordinance of 1885 was introduced in the council and adopted.  It may be noted in this connection that it is said in the first section of the ordinance that the rights and privileges granted and the requirements made are "in accordance with the contract entered into by and between the city of Marion and J. W. Starr on April 7, 1885," etc. And without question the provisions of the ordinance are in substantial conformity to the provisions of the Starr proposal.

Said ordinance is now made the subject of attack by appellee, and it is said by counsel that it has not now nor did it ever have any force or validity as an ordinance, and 4. ORDINANCES: therefore conferred no rights upon appellant passage: re-quired votes. or those whom it succeeds.  In the first place it is said that there was not present at the meeting of the council the requisite number of members to adopt the ordinance.  This contention may be disposed of in brief. As we have seen, the council was composed of nine members—the mayor and eight aldermen.  As shown by the official minutes, there were present at the meeting in question the mayor and seven aldermen, Alderman Braska alone being absent.  The vote on the passage of the ordinance was unanimous.  Section 489, Code 1873, provided that "all ordinances  *  *  *  shall require for their passage or adoption the concurrence of a majority of all the trustees of any municipal corporation," etc.  It follows that in the respect now in question the ordinance is not vulnerable to attack.

It should be said in this connection that it is the theory of counsel for appellee that the vote upon the

ordinance must be accepted as the vote upon the question of approval required by section 471, Code 1873. With this contention, and for reasons already sufficiently set forth, we do not agree.

The second ground is based upon a failure, as asserted, to call and record the yeas and nays as required by law. The minutes of the meeting show who were present, and that the roll was called, and that the vote was unanimous in the affirmative. This was tantamount to saying that each individual member present, naming him, voted yea; nays, none. Had there been votes for and against passage, it may be conceded that the names of members voting yea and those voting nay should have been recorded. But, where all vote one way, the record imparts no further information when the names are given in connection with the vote than it does where the result of the vote is stated as in the instance before us. This, of course, upon the theory that the minutes, as here, show who were present and taking part in the meeting. We think the record discloses a substantial compliance with the statute. The conclusion thus reached by us finds direct support in *Town of Bayard v. Baker*, 76 Iowa, 221.

5. PASSAGE of ordinances: yea and nay vote.

The remaining ground of attack is based upon the fact, as asserted, that the ordinance "contains more than one subject, and those subjects are not expressed or referred to in the title." It will be observed that the object of the ordinance as stated in the title is to enable the waterworks company to lay its mains and pipes within the limits of the city, and to condemn private property. It is said, and correctly, that the ordinance not only grants the right to lay mains, and to condemn and appropriate private property, but in addition thereto it provides for payment to the water company as hydrant rentals the sum of $3,000 or over each year; for the annual levy of a special tax to raise such

6. ORDINANCES: validity: power not expressed in title.

required sum; for the collection of water rents from private consumers in amounts to be agreed upon between the water company and the city; and for the purchase of the works by the city, at its option, after the expiration of twenty-five years, the limit of the grant. It is manifest that all these matters do not find direct expression in the title of the ordinance. Nor can we say that all the various matters referred to are included in the general subjects designated in the title. The payment of a large sum of money annually for hydrant rentals, and the levy and collection of a special tax, are subjects not involved, without direct expression, in a simple grant of authority to lay water mains in the streets of a city. It follows that an announcement in terms of the latter subject alone would not, by any fair intendment, suggest the former. Section 489, Code 1873, provides that "no ordinance shall contain more than one subject, which shall be clearly expressed in the title." It has been held that this provision is a limitation on the power of the council to enact ordinances. "By its terms it is mandatory, and ordinances passed in violation of it are inoperative because of the want of power in the council to enact them." *Dempsey v. Burlington*, 66 Iowa, 687; *Lincoln Land Co. v. Grant*, 57 Neb. 70 (77 N. W. Rep. 349).

The *Nebraska Case* presents conditions practically indentical with the facts in the case at bar, and the language of the statute of that state is substantially that of our own statute. The ordinance there in question, as disclosed by the title, was one to authorize the construction and maintenance of a system of waterworks, and to use streets, etc., for laying mains. It was held that a provision in said ordinance whereby the city obligated itself to pay hydrant rentals was neither clearly nor obscurely expressed in the title, and that, as the title was not an index to the contract, the contract itself was void. Counsel for appellant insists however, that even taking the view

that the ordinance appearing in the record before us was defective in the respect indicated, still such defect cannot be relied upon as a defense to this action, inasmuch as confessedly the contract has been fully performed on the part of the water company, and the city has received and accepted the full benefits thereof. That the city had power to contract for a water supply for fire protection and other public purposes, and this in connection with the grant of a franchise to a water company, cannot be questioned. *Grant v. Davenport*, 36 Iowa, 396; *Burlington Water Co. v. Woodward*, 49 Iowa, 58; *Creston Waterworks Co. v. Creston*, 101 Iowa, 687.

We have, then, no occasion to consider the rule that finds application in cases which involve only the exercise of powers not granted to municipal corporations. Re-

7. COLLECTION of water rents: invalidity of ordinance: estoppel.

duced to a last analysis, we think the situation presents simply this question: Can the defendant city be held liable for benefits received notwithstanding the fact that in entering into the contract the power possessed by it was defectively exercised? And it is our judgment that both reason and authority require an affirmative answer to such question. To begin with, the contract proposed by Starr was signed by him in good faith, and no other act on his part was required to make a binding contract. As far as the city was concerned, there was no purpose lying behind the defect in the execution of such contract, but such defect was occasioned solely by inattention on the part of the city council to the form of procedure prescribed by law. So, too, the waterworks company had no part in the enactment of the ordinance in question. Here, again, the defect was the result of careless inattention on the part of the city council. In this connection we may concede that, in the case of an executory contract, a municipality may be heard to deny the validity thereof, upon pointing out the fact that in connection therewith the prescribed forms

of law were not observed; and this would be true without reference to any question of intention or good faith, and notwithstanding the party with whom the contract was sought to be made had no actual knowledge of the existence of the defect. Manifestly, however the principle involved in such cases has no application to a case where the contract has been fully executed according to its terms by such other party. In the case before us the works were put in and operated for a period of nearly twenty years, in full faith that the contract had been legally executed and was binding upon both parties. The city had directed where hydrants should be placed, and had accepted of the use thereof as occasion demanded. In 1895, when revising its ordinances, it undertook, at least, to re-enact the ordinance of 1885, with some additional provisions for the further benefit and protection of the water company and its property. From time to time it had made payments to the company on account of hydrant rentals, etc.

Now, in view of all this, we agree with counsel for appellant that the city cannot avail itself of an irregularity occurring in connection with the execution or adoption of the contract agreement to defeat its liability for the water actually furnished, received, and used at the contract rate. The irregularity asserted did not involve a want of power. Had such been the case, the other contracting party might well be held to have acted in the premises at his peril. But it cannot be true, in reason or authority, that he may be despoiled of the fruits of the contract after the same has been fully performed on his part, simply because the city council is now able to point out that the draftsman employed by it had unintentionally and carelessly omitted to make reference in the title of the ordinance adopted by it to certain of the provisions contained therein. Every principle upon which the law

of estoppel is based may be invoked to override a defense thus sought to be interposed. The situation may fairly be likened to that of a principal who has accepted and retains all the benefits of a contract, but who seeks to avoid liability on his own part by asserting that the agent who acted for him in making such contract had failed to conform to his letter of authority in respect to form, conditions, etc. The principal might repudiate, of course; but to allow him to repudiate, and at the same time retain, would be to give sanction to an act of injustice, and put a premium upon fraud. Our conclusion finds ample support in the following among other authorities: *Bank v. Arkansas City, Etc,* (C. C.) 67 Fed. Rep. 196; *Moore v. N. Y.,* 73 N. Y. 238 (29 Am. Rep. 134); *Whitney Arms Co. v. Barlow,* 63 N. Y. 62 (20 Am. Rep. 504); *Knox v. Aspinwall,* 21 How. 539, (16 L. Ed. 208); *Marsh v. Fulton Co.* 10 Wall. 676 (19 L. Ed. 1040); *Hitchcock v. Galveston,* 96 U. S. 341 (24 L. Ed. 659); *City of Camden v. Mulford,* 26 N. J. Law, 49; *McPherson v. Foster,* 43 Iowa, 48; *City of Keokuk v. Ft. Wayne Elec. Co,* 90 Iowa, 67; Dillon on Municipal Corporations, section 457. We know of no cases, the authority of which we are willing to recognize, holding to the contrary.

There is another reason why this defense should not prevail. In 1895 the city council revised the ordinances of the city. The ordinance of 1885 was included therein

8. RATIFICATION of invalid contract: estoppel.

and readopted. True, here again omissions occurred and irregularities crept in, but all such had relation to the form and method of proceeding only, and, as we think, were cured by the special act of the legislature thereafter passed for that purpose, and which act was so passed at the instance of the city and by its procurement. Chapter 193, Acts Twenty-Sixth General Assembly. The revision and re-enactment of the ordinance, and the subsequent legalization thereof, not only recognized the existence of a contract

relation, but, as we think, amounted to a complete ratification of all that had theretofore transpired in connection with the creation of such relation and what had been done in pursuance thereof.

II.   We now inquire whether the water company is limited in its right of recovery to the proceeds of a five-mill levy and whether all such amounts have been fully paid. It will be observed that in the Starr proposal the amount of compensation to be paid was a fixed sum per hydrant.

9. PAYMENT of water rent: special assessment.

A special tax is referred to, but the rate thereof is not specified. In the ordinance the rate is fixed at five mills, and with the provision that if a sufficient sum is not realized therefrom the deficiency shall be paid from general funds. Such is the contract, and the right of recovery is thereby fixed unless there be some positive rule of law which dictates otherwise. Section 473, Code 1873, provides that when waterworks are constructed by an individual or company the city is authorized to enter into a contract with such individual or company to supply said city or town with water for fire purposes, etc., and to pay therefor such sum or sums as may be agreed upon between the contracting parties. Section 475 of the same Code authorizes the levy and collection of a special tax sufficient to pay water rents, but limits the rate to five mills on the dollar of taxable property. In *Creston Waterworks Co. v. Creston*, 101 Iowa, 687, we held that a municipal corporation is not limited to the five-mill special tax in the payment of hydrant rentals, but may pay the deficiency, if any, out of the general fund. Viewing the contract as made between these parties in the light of the statutes then in force and our holding in the *Creston Case*, we may dismiss the second ground of defense made without further comment.

III.   We may dispose of the third ground of defense in a word. Summarized, the facts show that the original

proposition was made by Starr. He assigned to the water-works company with the express consent of the city. The waterworks company went into the hands of a receiver, who operated the works, and from whom the city received service and to whom it paid hydrant rentals. The present company is a reorganization of the waterworks company, and from it the city has received service, and in part at least paid therefor. Moreover, it has given the present company direct official recognition by consenting, by resolution of its council, to a transfer of the plant to the Marion Improvement Company. What might have been the rights of the city if objection had been made at the time of transfer we need not stop to inquire. Taking the situation as we have it before us, it requires no argument to reach the conclusion that the defense now asserted, and under which the defendant city seeks to escape payment of the balance due, if any such there be, is without merit.

*10. LIABILITY of city for water rent: estoppel.*

IV. The remaining question to be considered has relation to the statute of limitations. Turning to the account attached to plaintiff's petition, and we find that beginning June 1, 1889, there are charged rentals on fifty hydrants at $60 each per annum, and on eight at $30 each per annum. This continued down to June 1, 1892, when the charge was for twelve hydrants, at $30 each per annum, to December 1, 1892. From this date to the close of the account, December 1, 1900, the charge was for fifty hydrants at $60 each per annum, and for eighteen hydrants at $30 each per annum. The sum total of the hydrant rentals charged is $39,720. From time to time payments by city warrants are credited on the account. No definite time seems to have been observed in making payments, and the warrants vary in the several amounts thereof from $100 to $1,592.49. The sum total of the payments credited is $31,334.18, leaving a balance of $8,385.82. The plaintiff offered evidence in

*11. ACCOUNT: application of payments: limitation.*

support of the account as stated, and this was not contradicted by any evidence on the part of defendant. Now, it is a well-established rule that where no special application is directed to be made, payments are to be credited in extinguishment of the debit items in the order in which such items accrued. This was the course pursued by the water company, there having been no request or directions to the contrary. It is apparent that this resulted in payment of all rentals down to within five years of the time this action was commenced. The limitation fixed by the statute being five years, we hold that no portion of the amount for which judgment is herein demanded was subject to the bar thereof.

Upon the whole case we conclude that the trial court was in error in dismissing plaintiff's action and rendering judgment against it for costs. The judgment is accordingly reversed, and the cause remanded for further proceedings according to'law.—Reversed.