GOSSERAND v. CITY OF GRETNA
CITY OF GRETNA v. GOSSERAND

(October 29, 1928. Opinion and Decree.)
(December 10, 1928. Rehearing Refused.)
(January 29, 1929. Decree Supreme Court Writ of Certiorari and Review Refused.)

Louis H. Gosserand, of New Orleans, attorney for plaintiff, appellee.

Andrew H. Thalheim, of New Orleans, attorney for defendant, appellant.

JONES, J. Plaintiff, former city attorney for the City of Gretna, claims of that municipality $300.00 as unpaid salary and $517.00 additional as a balance due for unpaid fees for services rendered under an alleged contract. The material allegations of his petition follow:

1. That he was duly employed at a salary of $50.00 per month by the Mayor and Board of Aldermen of the City of Gretna to act as City Attorney for the term beginning July 31, 1923, and ending August 31, 1925.

2. That he was further employed by resolution of the Mayor and Board of Aldermen to collect certain paving claims, to be paid a commission of 3 per cent, which was to cover all expenses incurred by him in collections.

3. That there was due him for work done in compliance with this resolution the sum of $692.00.

4. That he was also employed to sue certain delinquent debtors on past due paving claims and for services rendered therein he was to receive 10 per cent on principal and interest accruing on said claim.

5. That he sued fifteen named debtors with result that the sum of $11,092.58 was either collected or reduced to judgment, and that under the law of Louisiana he is entitled to 10 per cent of said amount. One of these fifteen debtors was the Police Jury of Jefferson Parish, which was made defendant in seven different suits in which the claims, without interest or attorney's fees, amounted to $6,561.85.

6. That the City of Gretna had collected as a result of these suits all its claims except those against the Police Jury of Jefferson Parish, which were placed in other hands for collection after the claims had been reduced to judgment by him.

7. That petitioner had expended the sum of $869.50 for the payment of clerks and stenographers and the rent of an office in collecting these claims.

8. That two voucher checks had been issued to him—one for $100.00 and one for $200.00, in payment of his monthly salary for the months of February, March, April, May, June and July, 1925, but payment on said checks had been refused by the City of Gretna.

9. That he had been paid by defendant $295.00 for expenses and that he had reserved for himself the sum of $1,378.16 out of amounts collected as a result of above described suits, leaving the balance due stated above.

The itemized account attached to his petition reads as follows:

"Debits.

| | |
|---|---|
| 6 months' salary as city attorney, at $50 | $300.00 |
| 3 per cent commission on $23,068 of paving assessments collected | 692.04 |
| 10 per cent commission on $11,092.58 of paving assessments sued on and collected or reduced to judgments | 1,109.25 |
| Disbursements for costs and expenses of litigation | 869.50 |
| | $2,970.79 |

Credits.

| | |
|---|---|
| Costs refunded by assessment debtors | $480.00 |
| Amounts collected from property owners | 1,378.16 |
| Amount advanced by city for expenses | 295.00 |
| | 2,153.16 |
| Balance | $817.63 |

In a supplemental petition petitioner averred that he had secured judgments against the Police Jury of the Parish of Jefferson amounting with interest and 10 per cent attorney's fees to $7,669.71, on which there was due him an attorney's fee of 10 per cent; that the above amount had been paid over to the Jefferson Parish School Board by the Police Jury for two squares of ground in the Third Ward, Gretna, and that under the law he was entitled to a lien and privilege on said judgment and he therefore prayed that a writ of provisional seizure issue therein, commanding the Sheriff to seize $766.97 in the hands of the Jefferson Parish School Board, and that after trial there be judgment in his favor with recognition of his privilege on said amount.

The City of Gretna filed several exceptions to these petitions, all of which were properly overruled. It then answered denying the indebtedness, denying the employment, and specially pleading the following defenses:

1. That the resolution of the City Council employing the plaintiff was ultra vires because the meeting at which said resolution was adopted was a special meeting, and no notice thereof had been given stating the subject matter to be considered and no service and return had been made by the marshal as required by Act 89 of 1921.

2. Said resolution was further ultra vires because under Section 4 of Act 131 of 1904, which is the law covering cost of sidewalk, curbing, etc., all costs and expenses should be paid by the owner of the real estate adjoining said paving.

3. Said resolution is null because it violates Section 15 of Act 136 of 1898, as amended by Act 189 of 1920, in that an ordinance is required to take care of the subject matter in question; and also because Section 33 of Act 136 of 1898 requires ordinances to be in a particular form, which is not applicable to a resolution.

4. Said resolution is violative of Section 2448, R. S., which forbids police juries and municipal councils of the State from contracting any debt or liability without fully providing in the ordinance creating the debt the means of paying the principal and interest of the debt so contracted.

It then set up a reconventional demand for the $225.00 already paid plaintiff. Later the City filed a second reconventional demand for the further sum of $1,378.16, which Gosserand had also received.

On objection of plaintiff the Court rejected the reconventional demand for the latter item. Thereafter the City brought suit against Gosserand for the amount of $1.378.16, which he had collected for account of the City. The suits, having been consolidated, were tried together, and plaintiff secured judgment for the amount

claimed, with recognition of his privilege upon $766.97 which had been seized in the hands of the Civil Sheriff.

We will first consider these special defenses in the order given.

The record shows that Gretna was incorporated under Act 136 of 1898, and that Section 15 of that Act enumerates the various powers of municipalities created thereunder. Among these powers is the following:

"* * * To exercise full jurisdiction in the matter of streets, sidewalks, sewers and parks; to open and lay out and construct the same; to repair, maintain, pave, sprinkle, adorn and light the same."

Section 23 of this Act provides:

"Be it further enacted, etc., That at the first regular meeting of the mayor and board of aldermen succeeding each regular municipal election, they shall elect a clerk, and, in cities, a tax collector. Such officers shall execute bond to the municipality. In such penalty, with such sureties and conditioned as may be prescribed by ordinance and shall hold their offices for two years and until their successors shall be elected and qualified. The Board may annually appoint an attorney at law for the municipality, prescribe his duties and fix his compensation, or it may employ counsel to represent the interest of the municipality, should occasion require."

Under these provisions the Mayor and Board of Aldermen clearly had the power to employ the City Attorney to collect unpaid paving claims.

On page 60 of Volume 1 of the transcript we find a copy of the minutes of the SPECIAL meeting of the Mayor and Board of Aldermen of the City of Gretna, September 25, 1923. This document begins as follows:

"Pursuant to call the Mayor and Board of Aldermen met this day for the purpose of adopting Ordinance No. 234, and accept-

ing Gov. Hall St. paving with the following members present:
"Mayor Viering, Ald. Higgins, White, Braun & McCune.
"Absent: Ald. Schurb * * * "

These minutes then show that various ordinances were passed empowering the Mayor to borrow money immediately, that various paving ordinances, after being read and considered by sections were adopted; that the ordinance providing for the paving of Governor Hall Street was read and accepted; that the City Engineer was duly authorized to make a survey of all unpaved streets, and to prepare specifications and plans for paving same. At the bottom of page 62 is found the following:

"Resolution by Ald. Higgins, seconded by Ald. Braun.
"Be it resolved by the Mayor and Board of Aldermen of the City of Gretna, that Mr. L. H. Gosserand, City Attorney, be authorized to continue the collection of assessments for paving uncollected by the previous administration, and,
"Be it further resolved that the three per cent. costs for said collection shall be assumed by the Mayor and Board of Aldermen as an obligation of the City of Gretna and shall be paid to the said City Attorney.
"* * *
"The above was adopted by the following vote:
"Yeas: White, McCune, Higgins & Braun.
"Absent: Schurb."

Act 89 of 1921 provides that when the Mayor or any other of the Board of Aldermen calls a special meeting for the transaction of important business, the notice, stating the time of the meeting and distinctly specifying the subject matters of the business to be acted upon, must be signed by the officer calling the meeting, and must be served by the marshal on all of the members who have not signed it and who can be found personally; and that said notice, with the endorsement of

its service, shall be entered on the minutes of the special meeting, and business not specified therein shall not be transacted at the meeting.

This document, which is signed by the Secretary and by the Mayor, and certified by J. F. Hotard, clerk, to be a true copy, does not show that the notice of the special meeting with service thereon was duly given.

It is thus seen that there was an irregularity or informality in the resolution employing plaintiff in that the call for the special meeting did not mention the subject of plaintiff's employment and the service of this call was not shown as required. It will be noted that Act 89 of 1921 does not penalize all proceedings with nullity for such failure and we cannot decree such a penalty where the act of the municipality was clearly within its specified powers, and one clearly contemplated by the charter. This is especially true as the municipality later recognized the employment by paying a part of the cost incurred by plaintiff, and by accepting and using the money collected by his efforts.

The authorities on this point quoted by defendant are not in point, as they deal with cases in which the municipality had no power to contract. Necessarily, the contract being void abinitio, could not be vitalized later by any confirmatory acts.

· Here, the resolution was at most voidable, and it might perhaps have been set aside before the work was done and its benefits accepted. But it would be grossly inequitable to give the defendant all the advantages and hold them harmless as to all responsibilities.

The decision in Mentz vs. Village of Mamou, 165 La. 1070, 116 So. 561, mainly relied on by defendant, is not applicable because the greater part of the work covered by the contract there had not been done and the Court found the contract ultra vires because the town had no power to make it. Although the amount claimed as damages for breach of this void contract was $2,350.00, the Court found that plaintiff had only drawn plans for which the price was fixed in the resolution at $150.00 and all the remainder of the work was done by another engineer. The Court thereupon distinctly recognized the right of plaintiff to sue on a quantum meruit for such services as he had actually rendered.

The doctrine controlling here is found in the following cases:

Hitchcock vs. Galveston, 96 U. S. 341, L. Ed. 659:

"The present is not a case in which the issue of the bonds was prohibited by any statute. At most, the issue was unauthorized. At most, there was a defect of power. The promise to give bonds to the plaintiffs in payment of what they undertook to do was therefore, at farthest, only ultra vires; and, in such a case, though specific performance of an engagement to do a thing transgressive of its corporate power may not be enforced, the corportion can be held liable on its contract. Having received benefit at the expense of the other contracting party, it cannot object that it was not empowered to perform what it promised in return, in the mode in which it promised to perform. They are not suing upon the bonds, and it is not necessary to their success that they should assert the validity of those instruments. It is enough for them that the City Council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work as well as to assume liabilities; that the City has received and now enjoys the benefit of what they have done and furnished; that for these THINGS THE CITY HAS PROMISED TO PAY; and that after having received the benefit of

the contract the city has broken it. It matters not that the promise was to pay in a manner not authorized by law. If payment cannot be made in bonds because their issue is ultra vires, it would be sanctioning rank injustice to hold that payment need not be made at all. Such is not the law. The contract between the parties is in force so far as it is lawful."

Marion Water Co. vs. Marion, 121 Ia. 306, 96 N. W. 883:

"Where the illegality does not involve any want of power to contract, but is merely a defect in the execution of the contract resulting from inattention on the part of the City Council to the form or procedure prescribed by law and the contract has been fully performed according to its terms by the other party, the City cannot avail itself of the illegality to defeat its liability."

Drainage Commissioners vs. Lewis, 101 Ill. App. 150; Neosha City Water Co. vs. Neosha, 136 Mo. 498, 38 S. W. 89; Lincoln Land Co. vs. Grant, 57 Neb. 70, 77 N. W. 349:

"A corporation cannot retain the fruits of a contract and escape liability thereunder, if it is only attacked for irregularity in the making and not for lack of power."

Chicago vs. Norton Milling Co., 196 Ill. 580, 63 N. E. 1043:

"Where a contract entered into by a municipal corporation is within its power and apparently advantageous to the corportion, it will be estopped from challenging it, although it was invalid from its inception, if it has received the benefit of it."

In Bruning vs. The City of New Orleans, 122 La. 316, 47 So. 624, the Supreme Court held that the contractor could collect from the City the cost of paving, although the abutting owners had been held harmless, because of the failure by the City to give them notice as directed by city ordinance. The basis of this decision is that the City had full authority to make the contract and the contractor was not liable for the City's failure to protect its rights against the property owners.

In Moylan vs. City of New Orleans, 32 La. Ann. 673, plaintiff, a paving contractor, lost a similar suit because the city at that time had no authority to make the contract. On this point see Grasser Company vs. The City of New Orleans, No. 9971, Court of Appeals, Parish of Orleans, 118 So. 841. See also McQuillin's Municipal Corporations, second edition, volume 3, section 1358, paragraph 2:

"In other words, a municipal contract which is not void but merely voidable, may be ratified, and the municipality, by its conduct, may be estopped to deny the validity thereof. Voidable contracts which may be ratified, or as to which an estoppel may exist, include those defectively executed in some particular, and those made by some officer or body or board which had no authority to act because the power to make the contract resided in some other officer or because the authority to act had not been duly conferred on such body or officer by ordinance or otherwise. Thus, where an officer having power to enter into a contract if authorized by the proper municipal body, makes a contract without such authority, such body may ratify the contract. So a municipal corporation may ratify a contract not in itself unlawful, made by an agent acting both for it and the other party. So where a committee has power to contract in behalf of the town and a minority so contract, such contract may be ratified and validated by a majority of such committee."

Ruling Case Law, Section 352:

"The plea of ultra vires should not prevail when it would not advance justice, but would on the contrary accomplish a legal wrong.

"* * *

"When, however, a contract is invalid merely because of a defective execution of the power granted, and there has been

no violation of an express prohibition of statute, or of a rule of public policy established for the protection of the taxpayers, if it has been carried out in good faith by the other party thereto the municipality will be held liable thereon or at least bound to pay for the benefits received thereunder. The principle of estoppel may, it has been held, apply so as to hold a municipal corporation liable even when the contract is invalid because of the unconstitutionality of the statute under which it was executed, if it was not beyond the general powers of the municipality, or expressly forbidden by law."

Section 360:

"So it is competent for a municipal corporation to ratify a contract and thereby make it a binding obligation, acting through its authorized agencies and in the manner prescribed by law for making contracts of such a character, if the contract was within its general corporate powers but was invalid because defectively or irregularly executed, or because the officer or agent who purported to execute it on behalf of the municipality had not the requisite authority."

There is no merit in the second special defense. The fact that Section 4 of Act 131 of 1904 provides that the total cost of paving shall be paid by the adjoining owners, does not prohibit the City of Gretna from paying an attorney to collect unpaid paving claims. In fact, Section 7 of this Act provides that the City shall have power to proceed by suits against the assessed property holders to collect unpaid paving bills, together with 10 per cent of the amount of the judgment as attorney's fees. Two of the volumes of the transcript brought up in this case are filled with records of the suits against delinquent paving debtors and in all the petitions a 10 per cent attorney's fee is prayed for. Furthermore, all the judgments secured allow the amount prayed for as attorney's fees.

There is, likewise, no merit in the third special defense. While Section 15 of Act 136 of 1898, as amended by Act 189 of 1920, states that a municipality has the power to enact ordinances for various enumerated purposes, the employment of an attorney to collect unpaid paving claims is not therein specified. Moreover, the fact that Section 33 of Act 136 of 1898 requires ordinances to be written in a certain fixed form, has no application here because this contract was evidenced by a resolution of the Council and not by an ordinance; and we know of no law forbidding the use of a resolution in such a case as this and we have been referred to none by counsel for appellant.

Special defense No. 4 is invalid even if no special provision was made in the resolution for the payment of the 3 per cent fee as required by Section 2448 R. S. because the evidence shows that the defendant paid many other such claims out of its surplus funds. On this point we quote approvingly from the opinion of the trial Judge:

"We learn from the testimony adduced at the trial that it has been the custom of the past administration, and of the present administration, to expend money as the exigencies of the occasion arose, to create expenses and to meet those expenses whenever an occasion arose, which made the expenditure necessary.

"This particular case is no exception to the rule and it is in strict conformity to the modus operandi of the present administration. As a matter of fact, it was testified to by the Chairman of the Finance Committee that they had paid thousands of dollars of the obligations of a previous administration (see testimony of Henry F. Bender, Chairman of Finance Committee, pp. 19 and 20) and the PARTICULAR OBLIGATION OF THE CITY OF GRETNA TO THIS PLAINTIFF SEEMS TO HAVE BEEN AN EXCEPTION TO THE RULE, YET NO GOOD REASON HAD OR HAS BEEN ADVANCED FOR THE CITY OF GRETNA'S ACTION IN THE INSTANT CASE, ESPECIALLY THAT IT ADMITS ABUNDANT EXCESS REVENUES."

The general defense or general denial of defendant's indebtedness is not sustained by the record. We concur with the trial Judge in all his findings of fact as to the unpaid salary and as to expenditures and services of plaintiff. We do not think it material whether all the claims were reduced to judgment by plaintiff or not. Plaintiff swore and his testimony is uncontradicted that the payment of the claims with interest and 10 per cent attorney's fees resulted from his efforts. We find in the record certified copies of seven assessment ordinances passed by defendant, and each of them provides that the property owner shall pay 10 per cent attorney's fees in case of suit on unpaid claims.

The fact that these suits were brought under these ordinances and that the City received the amounts, conclusively shows that the City recognized Gosserand as its attorney in all these matters. In fact, such recognition was never for one moment denied until he sought compensation. The fact that some of these judgments, though obtained by plaintiff, were collected by others, does not invalidate the claim of the attorney who did the work.

Bright vs. Hewes, 18 La. Ann. 666:

"The City attorney who obtained the judgments is entitled to the five per cent on the amount collected on said judgments, and his successor in office has no authority to interfere and enjoin the Sheriff from paying the percentage to the Attorney who obtained the judgments."

Hiestand vs. LaBatt, 11 La. Ann. 30:

"The attorney has earned his fee when he has prosecuted or defended a case to judgment; so that the Assistant City Attorney who obtains the judgment, is entitled to the commission, although the actual collection of the debt may be made by his successor."

Commander vs. City of Carrollton, 15 La. Ann. 7:

"An attorney-at-law is entitled to commissions on a judgment obtained by him, although he be superseded by an appointment of another attorney, and the amount of the judgment collected by his successor."

Morel vs. City of New Orleans, 12 La. Ann. 485:

"An attorney-at-law is entitled to claim commissions upon judgments obtained through his agency as well as upon moneys actually collected on executions and accounted for to his clients, although he be superseded by the appointment of another attorney."

We are of the opinion that suit No. 6312 wherein the City of Gretna claims $1,378.16 on the ground that Gosserand is holding this amount illegally, was properly dismissed:

Butchers Union vs. Crescent City Live Stock Landing & Slaughter House Co., 41 La. Ann. 355, 6 So. 508; Garley vs. City of New Orleans, 41 La. Ann. 75, 7 So. 659; Hereford & Wife vs. Leverich, Curator, 16 La. Ann. 397.

We cannot consider appellee's motion to amend the judgment, as it was filed too late.

For above reasons the judgment is affirmed.