LINCOLN LAND COMPANY v. VILLAGE OF GRANT.

FILED DECEMBER 8, 1898. No. 8519.

1. **Municipal Corporations: ORDINANCES: TITLES.** An ordinance adopted by a board of village trustees is valid only as to subjects clearly expressed in the title.

2. ———: ———: ———: WATER COMPANIES. A contract providing for the rental of five hydrants is not a subject of legislation expressed in the following title: "An ordinance authorizing the Lincoln Land Company to construct and maintain a system of water-works, and use the streets, alleys, avenues, and public grounds for laying their mains and pipes in the town of Grant, in Perkins county, Nebraska."

3. ———: ———: CONTRACTS. A contract for the rental of five hydrants contained in an ordinance entitled as aforesaid is void,

Lincoln Land Co. v. Village of Grant.

4. ———: VOID CONTRACTS: RETENTION OF BENEFITS: QUANTUM MERUIT. Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received.

5. ———: ———: ———: RATIFICATION. In such an action it is unnecessary to establish a ratification of the contract. *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla*, 40 Neb. 775, and *Tullock v. Webster County*, 46 Neb. 211, distinguished.

ERROR from the district court of Perkins county. Tried below before GRIMES, J. *Reversed.*

*W. S. Morlan* and *J. W. Deweese,* for plaintiff in error.

*C. P. Logan* and *C. C. Flansburg, contra.*

SULLIVAN, J.

The Lincoln Land Company sued the village of Grant in the district court of Perkins county to recover the sum of $900 alleged to be due as rental for fifteen hydrants. On demurrer to the petition judgment was rendered in favor of the defendant, and the plaintiff prosecutes error to this court.

From the averments of the petition it appears that on April 13, 1889, the board of trustees of the defendant village adopted an ordinance authorizing the plaintiff to construct and maintain a system of water-works in said village, and to use the streets and alleys thereof for the term of twenty-five years for the purpose of laying down the necessary mains and pipes. The ordinance further provided that the company should furnish the village the use of fifteen hydrants free of cost for the period of four and one-half years immediately following the completion of the system, and that for the twenty and one-half years next ensuing the village should pay to the company an annual rental of $60 each for not less than fifteen hydrants. The plant was constructed, and the period during which water was to be furnished free

expired April 1, 1894. During the following year the village used the fifteen hydrants, but has refused to pay therefor the rental fixed by the ordinance. On behalf of the defendant it is insisted that the provision of the ordinance in relation to the rental of hydrants is void, for the reason that there was no antecedent appropriation to cover the expenditure as required by section 86, article 1, chapter 14, Compiled Statutes. Our attention is especially directed to section 89 of the village charter, which is as follows: "No contract shall be hereafter made by the city council or board of trustees, or any committee or member thereof; and no expense shall be incurred by any of the officers or departments of the corporation, whether the object of the expenditure shall have been ordered by the city council or board of trustees or not, unless an appropriation shall have been previously made concerning such expense, except as herein otherwise expressly provided." The section quoted, in connection with other kindred provisions of the act, evinces a clear legislative purpose to confine the current expenditures of municipalities of the class here in question to their current revenues, and to prevent the creation of long-time obligations which may prove burdensome in the future, although prudent and provident enough when viewed in the light of the present conditions. It would be difficult indeed to choose more explicit and imperative language to express the idea that municipal authorities have no power, unless expressly granted, to create liabilities extending beyond the current year. The legislative policy to leave future municipal revenues unincumbered being frequently declared and strongly accentuated, as will appear from an examination of sections 86, 87, 88, and 89 of the charter (Compiled Statutes, ch. 14, art. 1), the power to make a valid contract imposing on the village a serious financial burden during a quarter of a century ought not to be derived as a mere probable inference from an ambiguous statute. But in the case of the *City of North Platte v. North Platte Water-*

*Works Co.*, 56 Neb. 403, the existence of such power was assumed without discussion. What was said on the subject is here subjoined: "By subdivision 15, section 69, of the chapter just referred to [Compiled Statutes, ch. 14, art. 1], it is provided that cities of the class in which North Platte is embraced may enact ordinances, among other things: 'To make contracts with and authorize any person, company, or corporation to erect and maintain a system of water-works and water-supply, and to give such contractors the exclusive privilege, for a term not exceeding twenty-five (25) years, to lay down in the streets and alleys of said city water-mains and supply pipes, and to furnish water to such city or village and the residents thereof and under such regulations as to price, supply, rent of water-meters as the council or board of trustees may from time to time prescribe by ordinance for the protection of the city.' The power to contract with individuals or corporations for a supply of water to be furnished for the use of the city for a term not exceeding twenty-five years implies the power to provide that payments shall be made as the right to receive them accrues, without an appropriation having been previously made with reference to the several payments as they shall mature." The writer concurred in the opinion from which the foregoing extract is taken, but is now convinced, as the result of a more critical examination of the statute in question, that the conclusion reached was incorrect, and that a city or village is only authorized to give an individual, company, or corporation an exclusive privilege for twenty-five years to lay down water-mains and supply pipes in the public streets and alleys; and, also, the exclusive right for the same period to furnish water to the municipality and its inhabitants on such terms as may be fixed by ordinance from time to time. That the terms should be reasonable is, of course, implied. Immediately following the provision of the statute contained in the foregoing excerpt it is declared that "the right to supervise and control

such corporation as above shall not be waived or set
aside." Considering subdivision 15 of section 69 in con-
nection with sections 86, 87, 88, and 89, it seems to be
entirely clear that municipal authorities are without
power to make contracts concerning either the quantity
of water to be furnished or the price to be paid which
shall extend beyond the year in which such contracts are
made. If a city or village may, by ordinance, determine,
from year to year, the quantity of water it will take and
the price it will pay, then the owner of the water-plant
has at best but a barren and anomalous contract,—one
that may be eviscerated but not annulled. It is needless,
however, to pursue this subject further. My associates
are satisfied with the decision in *City of North Platte v.
North Platte Water-Works Co., supra,* and it must there-
fore be accepted as a precedent for this case.

It being settled that the village was authorized to
make the contract in question, we proceed now to in-
quire whether the power was exercised in a lawful man-
ner. The ordinance on which the plaintiff relies was
entitled "An ordinance authorizing the Lincoln Land
Company to construct and maintain a system of water-
works and use the streets, alleys, avenues, and public
grounds for laying their mains and pipes, in the town of
Grant, in Perkins county, Nebraska." Section 79 of the
charter declares that "ordinances shall contain no sub-
ject which shall not be clearly expressed in its title."
Was the contract for fifteen hydrants at an annual rental
of $900 clearly expressed in the title above quoted? We
think it was neither clearly nor obscurely expressed.
The title neither specifically nor by general terms gave
notice that the ordinance contained a contract binding
the city to anything in the future. The title declared
that the purpose of the ordinance was to grant a fran-
chise. It suggested nothing more. A contract for a
supply of water was not a necessary incident or condi-
tion of the grant. (*State v. Mayor,* 32 Neb. 568-587.) The
title was sharply restrictive and not at all calculated to

arouse aldermanic suspicion that there might be a contract concealed in the folds of the measure. The title was not an index to the contract, and the contract was void. (*White v. City of Lincoln*, 5 Neb. 505; *Ives v. Norris*, 13 Neb. 252; *Messenger v. State*, 25 Neb. 674.) Still, it does not follow that the demurrer to the petition was rightly sustained. While the action was primarily one to recover upon an express agreement, the petition, after stating that the plaintiff furnished the defendant fifteen hydrants free of cost for four and one-half years and that it continued to furnish a like quantity of water after the expiration of said term and until this action was commenced, proceeds as follows: "The service of each fire hydrant, as hereinbefore set forth, was and is reasonably worth and of the value of the sum of $60 per year, and the services of the said fifteen fire hydrants were at all the times aforesaid and is of the reasonable value of $900 per annum. This plaintiff has complied with all the terms and conditions of said ordinance on its part to be performed, and in pursuance of the terms and conditions of said ordinance has furnished to the said defendant water to the amount and value of $900, which amount defendant agreed to pay the plaintiff." It thus appears from the averments of the petition, admitted by the demurrer, that the plaintiff has furnished to the defendant water of the value of $900 which the defendant has received and appropriated to its use. This fact may not constitute a ratification of the contract contained in the ordinance. It may be that a ratification, except by ordinance, is not permissible. Such would be the rule if the case falls within the principle laid down in *Gutta Percha & Rubber Mfg. Co. v. Village of Ogalalla*, 40 Neb. 775, and approved in *Tullock v. Webster County*, 46 Neb. 211. But the question now before us for decision is not whether the petition states a cause of action on contract, but whether the facts pleaded entitle the plaintiff to any relief whatever.

The case of *Clark v. Saline County*, 9 Neb. 516, was an

action to recover from the county the value of certain land conveyed by it to Clark in part payment for services and materials furnished by him in the construction of a public bridge. The title to the land had failed, and a recovery was permitted on the ground that the county should pay the fair value of what it had received. The following extract from *Pimental v. City of San Francisco*, 21 Cal. 352, was quoted with approval: "The city is not exempted from the common obligation to do justice, which binds individuals. Such obligation rests upon all persons, whether natural or artificial. If the city obtain the money of another by mistake, or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property, which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. The legal liability springs from the moral duty to make restitution; and we do not appreciate the morality which denies in such cases any rights to the individual whose money or other property has been thus appropriated. The law countenances no such wretched ethics. Its command always is to do justice."

*Ward v. Town of Forest Grove*, 20 Ore. 355, 25 Pac. Rep. 1020, was an action by a physician to recover for services rendered in caring for persons afflicted with small-pox. The services were rendered under the authority of a resolution. The power to employ a physician in such cases could be lawfully exercised only by ordinance, but a recovery was permitted, the court saying: "The corporation had the power to make the contract with plaintiff, upon which this suit is brought, and attempted to exercise such power by a formal resolution of its board of trustees. The resolution was, perhaps, an irregular exercise of the power, but it accomplished the purpose intended, and, having received the benefit of the plaintiff's services, the defendant should be compelled to pay him the reasonable value thereof."

In *Pittsburg, C. & S. L. R. Co. v. Keokuk & Hamilton*

*Bridge Co.*, 131 U. S. 371-389, Mr. Justice Gray delivering judgment uses the following pertinent language: "A contract made by a corporation, which is unlawful and void because beyond the scope of its corporate powers, does not, by being carried into execution, become lawful and valid, but the proper remedy of the party aggrieved is by disaffirming the contract, and suing to recover, as on a *quantum meruit*, the value of what the defendant has actually received the benefit of."

In the case of *Paul v. City of Kenosha*, 22 Wis. 266, where the plaintiff had purchased certain bonds of the city which were void for want of power to issue them, it was held that he was entitled to recover the amount paid. The court said: "The city has had that amount of money and legal scrip for its city bonds, which turn out to be of no value whatever. It seems to fall under the general rule of law, that where a party sells an obligation which turns out to be valueless and not of such a character as he represents it to be, he is liable to the vendee as upon a failure of consideration. The city bonds, it appears, were void when the agents of the city sold them to the plaintiff. Is it just and equitable that the city retain the money which it has received for its worthless bonds?"

The foregoing authorities sufficiently establish the right of the plaintiff to recover in this case the value of the use of the fifteen fire hydrants. Other decisions to the same effect are: *Chapman v. County of Douglas*, 107 U. S. 348; *Marsh v. Fulton County*, 10 Wall. [U. S.] 676; *Brown v. City of Atchison*, 39 Kan. 37, 17 Pac. Rep. 465; *Livingston v. School District*, 76 N. W. Rep. [S. Dak.] 301; *City of Parkersburg v. Brown*, 106 U. S. 487; *Argenti v. City of San Francisco*, 16 Cal. 256.

It is contended that the conclusion at which we have arrived is contrary to the decision in *Tullock v. Webster County, supra.* The question there considered was whether ratification of a void contract resulted from an acceptance and retention of benefits by the county. It

was held that as there was no power to make the contract there could be no authority to ratify it. That is certainly sound doctrine. In this case the power to contract existed, but was not exercised in the manner prescribed by the statute. But we do not in this case decide that there was a ratification. The writer thinks there was not, but the question is left open because counsel have not discussed it. The principle upon which this decision rests was not at all considered in the *Webster County Case*. The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.