John T. Cathers, appellant, v. Frank E. Moores et al., Appellees.*

Filed January 5, 1907. No. 14,588.

Cities: Torts of Officers: Action. Unofficial citizens cannot maintain an action on the behalf, and practically in the name, of public corporations to recover for the conversions or embezzlements, or other torts or misdeeds of officials of municipalities and of persons having dealings with them.

Appeal from the district court for Douglas county: Willis G. Sears, Judge. *Affirmed.*

*Byron G. Burbank,* for appellant.

*Weaver & Giller* and *W. J. Connell, contra.*

Ames, C.

The petition alleges that the plaintiff is a citizen, resident and taxpayer of the city of Omaha, and that he prosecutes the action for the benefit of all other persons similarly situated for the use and on behalf of the city, and that he has requested the city attorney to begin and prosecute a like suit in the name and on the behalf of the city, but that he has refused so to do, giving as his reason for such refusal that such an action would be without authority of law. The action was begun against Frank E. Moores, then mayor of the city, but now deceased, August H. Hennings, then treasurer of the city, but now deceased, Charles O. Lobeck, comptroller of the city, and four other persons, members of the city council. The city is also named as defendant, and the suit has been revived against the personal representatives of the deceased defendants.

* Rehearing allowed. See opinion, p. 17, *post.*

The petition alleges, in substance, that in May, 1904, the council of said city passed, with the concurrence of such of the defendants as were members of that body, and that the mayor approved and signed an ordinance purporting to appropriate the sum of $15,539.75 for the payment of certain persons for services rendered by them as common laborers in cleaning the streets of the city, and that the mayor, treasurer and comptroller had by their concurrent action disbursed that sum from the treasury in the making of the payments mentioned. But it is alleged that all the foregoing proceedings were without warrant or authority of law, and resulted in an injury and damage to the city in the sum so paid out, because the laborers for whose services the payments were made had not, previous to the rendition thereof, been employed, nor had their wages been fixed by any authority empowered by law to do said acts or either of them, although the city charter expressly enacts that "no laborer or employee shall receive any compensation whatsoever for services rendered prior" to the time of their employment and the fixing of their compensation by the board of public works and the mayor and council, as provided by the act. The petition therefore alleges, in effect, that the persons named were by their conduct, recited, guilty of a tortious conversion of the moneys so disbursed, for which they and their personal representatives were and are jointly and severally liable to the city. The prayer of the petition is that the defendants, except the city, be charged with, and required to account for, the moneys so paid out as trustees, and that the plaintiff have and recover said sum, with interest, for the use and benefit of the city, and for such further and other relief as may be just and equitable.

We fail to discover any ground for the interposition of the equity powers of the court. The cause of action on behalf of the city, if there is one, which we do not decide, is in tort for a wrongful conversion or embezzlement, for which the law furnishes a plain, adequate and speedy remedy.

There was an answer somewhat in the nature of a confession and avoidance, in which it was alleged, among other things, that the services in question had been actually rendered, and that the payments complained of were not in excess of their fair value, and that the city authorities and the citizens and taxpayers generally, including the plaintiff, had had full knowledge of all the circumstances, but had made no objection by appeal from the allowance or payment of the claims or otherwise, except by the beginning of this suit some months afterwards. There was a trial without a jury and a judgment of dismissal, from which the plaintiff has appealed.

The transcript is not accompanied by a bill of exceptions, but there are annexed to the judgment entry, as though a part thereof, certain special findings of fact upholding the allegations of the answer, and "by reason" of which, as the journal recites, the court "found generally against the plaintiff," that is, found, in effect, that the plaintiff is without equity. What the force and effect of these special findings might in other circumstances be, it is, in our opinion, unnecessary to decide. If, as we have already intimated, the petition had been filed by and in the name of the city of Omaha as plaintiff, we are of opinion that it would have presented no matter of equitable cognizance; but we are equally convinced that it presents no matter which the plaintiff is entitled to litigate in any form of action in any court. The courts in this country have gone to extreme lengths in entertaining suits by taxpayers against local boards and officers to restrain the latter from entering into unauthorized or irregularly executed contracts, and from wrongfully and unlawfully, or, perhaps, negligently, disbursing public moneys or disposing of public property; but the origin and foundation of jurisdiction in all such actions is that the plaintiff and others similarly situated are without other remedy; that is to say, that, unless the court shall exert its equity powers to prevent the doing of the threatened act, the plaintiff or taxpayers will have no means of repairing the damage

after it has been committed. But this, in our opinion, is the limit to which the court could go with safety, even if principle were supposed to extend further. The result of an action like the present, if one could be maintained, would, of course, have the same quality of conclusiveness with respect to parties and privies as has a final judgment in other similar cases. It seems to us that the truth of the proposition is so obvious as to call for no argument in its support; that the policy would be an extremely hazardous one which would permit unofficial citizens to constitute themselves public agents, and to begin and prosecute actions on the behalf, and practically in the name, of public corporations to recover for the conversions and embezzlements, or other torts or misdeeds of officials of municipalities and of persons having dealings with them. The opportunities for collusive actions and judgments, and for taking advantage of the incompetency and irresponsibility of plaintiffs, which such a practice would afford are too manifest to require specification. Only less injurious to the public interests would be the confusion and embarrassment into which municipal affairs would be thrown by the encouragement that such a practice would afford for the gratification of personal and political prejudice and rancor, and the multiplicity of litigation to which they would almost inevitably give rise. It may well be doubted whether under such circumstances honorable and responsible persons could be induced to accept office, or, if they should do so, whether they would not be so hampered and annoyed as to render the due discharge of their necessary functions extremely difficult, if not practically impossible.

Section 40, ch. 12a, Comp. St. 1905, provides that "the city attorney shall attend to all cases in any court in this state, except in the police court, and appeal cases therefrom, wherein the city may be a party, plaintiff or defendant, or a party in interest," except in those cases in which he shall have a personal interest, and in such cases the mayor and council are directed to appoint some other

person to act temporarily in his stead. By sections 143 and 144 the mayor and council are given general legislative and administrative control over the affairs of the city, and of the prosecution and defense of suits by it and on its behalf. In our opinion, these provisions are exclusive, and the city or its officers cannot be put to the trouble, annoyance or expense, or required to incur the risk, of litigation in suits of this character instituted by persons having no special or peculiar interest, and suffering no particular injury.

We therefore recommend that the judgment of the district court be affirmed.

OLDHAM and EPPERSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

The following opinion on rehearing was filed July 12, 1907. *Judgment of affirmance adhered to:*

1. **Cities:** TORTS OF OFFICERS: ACTION. A resident taxpayer of a municipal corporation may maintain an action against its officers who have squandered or dissipated its funds, or paid them out for an unlawful or unauthorized purpose, to recover such funds for the use and benefit of the corporation where its proper law officer neglects and refuses to prosecute such an action.

2. ———: ———: ———. To entitle a taxpayer to a judgment in such a case, it must appear that the municipality could have maintained the action in the first instance.

3. ———: LIABILITY. Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received; and where it has paid for such benefits it cannot maintain an action to recover back such payment.

4. ———: CLAIMS: ACTION BY TAXPAYER. A taxpayer who has full knowledge of the allowance of a claim by the municipal authorities, and is afforded an opportunity to appeal from such allow-

ance, and fails to avail himself of that remedy, is not thereafter entitled to maintain an equitable action against the officers of the municipality to recover the money disbursed upon such allowance.

BARNES, J.

By our former opinion,. *ante*, p. 13, where a general statement of the facts of this case will be found, it was held that "unofficial citizens cannot maintain an action on the behalf, and practically in the name, of public corporations to recover for conversions or embezzlements, or other torts or misdeeds of officials of municipalities and of persons having dealings with them." Having been convinced by appellant's brief, on his motion for a rehearing, that the rule above quoted is too broadly stated, a rehearing was allowed, and it is now strenuously contended by the appellant that we are committed to a contrary doctrine. In support of this, our attention is directed to *Shepard v. Esterling*, 61 Neb. 882, where it was said: "There is, it is believed, no serious question about the right of a taxpayer to maintain a suit to restrain the governing body of a municipal or public corporation from making an illegal disposition of public funds or property. *Tukey v. City of Omaha*, 54 Neb. 370. And on principle it would seem that a taxpayer should be permitted to enforce for the benefit of such corporation a right of action which its governing body has refused to enforce. If a taxpayer, to avoid the burdens of needless taxation, may sue to prevent public officers from squandering public money, there is, it seems to us, no good reason why he may not also commence and prosecute to judgment an equitable action for the enforcement of a corporate claim which the officers of the corporation have refused to enforce. *Estate of Cole*, 102 Wis. 1; *Quaw v. Paff*, 98 Wis. 586; *Frederick v. Douglas County*, 96 Wis. 411." We are satisfied that the rule above stated is supported by the weight of modern authority, and it may be said that a resident taxpayer of a municipal corporation may maintain an action against

its officers who have squandered or dissipated its funds, or paid them out for an unlawful or unauthorized purpose, to recover such funds for the use and benefit of the corporation where its proper law officer neglects and refuses to prosecute such an action, and to this extent our former opinion is hereby modified.

This brings us to a consideration of the merits of this controversy. The record is composed of a transcript of the pleadings and the findings and judgment of the trial court, but contains no bill of exceptions. It appears that the pleadings are sufficient to support the findings, both general and special, and so it only remains for us to determine whether the proper judgment has been rendered. It appears that the legislature of 1903 passed an act creating a new charter for the city of Omaha. This act, for some unexplainable reason, contained an emergency clause and went into effect on the 2d day of April, 1903, which was the date of its approval. Among other provisions it contained the following: "The board of public works shall appoint all inspectors, laborers and all other employees necessary to carry out the provisions of this section, subject to the extent and limit of the funds provided by the mayor and city council for the purpose; and said board of public works shall present the names of all such inspectors, laborers and all other employees, together with the time covered by such employment and their compensation for the same to the city council and city comptroller, and said appointments shall be confirmed and the compensation shall be fixed by the mayor and city council before said inspectors, laborers and all other employees shall enter upon their duties as such. any compensation whatsoever for services rendered prior And no inspector, laborer or other employee shall receive to such fixing of the compensation and confirmation." Comp. St., ch. 12a, sec. 101a. When the act took effect there were working upon the streets of the city a large number of persons who had theretofore been regularly employed for that purpose. The city, through its board

of public works, mayor and council, failed to comply with
the charter provision above quoted until after the ex-
piration of the months of April and May of that year.
The laborers did full service, and earned the money which
they subsequently received from the city, and the city it-
self was benefited to the full extent of the money paid out
for the labor thus performed, which was actually neces-
sary to keep the streets of the city clean and in a sanitary
condition. In fact, the services performed were necessary
for the health and welfare of the city. The pay-rolls of
said employees, which formed the basis of the claims in
question, were duly certified to by the foremen in charge of
the different departments under which the employees were
working, and were finally certified and sworn to by the
city engineer before they were presented to the city council.
The claims were also investigated by the proper com-
mittees, and on February 19, 1904, a concurrent resolu-
tion was adopted by the mayor and city council, as fol-
lows: "Resolved by the city council of the city of Omaha,
the mayor concurring, that the pay rolls of the board of
public works for the months of April and May, 1903, now
in the hands of the city comptroller be, and the same are
hereby, allowed, and the city comptroller is hereby in-
structed to amend the same into the pending appropria-
tion ordinance." Of the adoption of this resolution the
plaintiff had full knowledge. The claims in question were
not paid, however, until May 3, 1904, when they were
amended into the then pending appropriation ordinance,
and such payment constitutes the basis of this action.
It thus appears that, although the services in question
were performed in the year 1903, they were not paid for
until 1904, and were then paid out of the funds appropri-
ated for that year. The trial court found generally for
the defendants, and also specially, among other things,
as follows: "The court further finds that none of the de-
fendants in any way were interested in the claims in
question, or the claimants thereof, or actuated by merce-
nary motives, and that each in his several relations in

which he acted believed that said city was morally liable for said claims, and believed that said city had received the full benefit of the labor so paid for, and that all that was lacking was the sole fact of the omission by the board of public works to transmit the list of employees at the proper time to the comptroller and council. And the court finds that each of said defendants were warranted in so believing, and the court finds in accord with the said belief of defendants so referred to.

"These defendants having nothing to do, by reason of their several functions, with the employment of the labor in question in the first instance, nor said labor being in any manner under their control, either jointly or severally, and said city's having received the full benefit of the labor had, as paid for, and no mercenary corruption in any manner appearing, and the plaintiff not having availed himself of his right to compel the submission of the list of labor, whereby the charter formalities would have been complied with, nor having availed himself of his right of appeal upon the allowance of said claims, this court refuses in an equitable proceeding to mulct these several defendants in a judgment, as prayed by plaintiff."

The plaintiff, however, contends that the acts of the defendants who participated in the transactions complained of are absolutely void, and they should be compelled to refund the money thus expended to the city. We do not so view this question. Here we have a case where the city had the power to contract with persons to keep its streets clean and in proper repair. It also had the power to pay for the services rendered under such a contract, and while it may be said that its authority was so irregularly exercised as to render the proceedings illegal, still there was not an entire lack of power to perform the acts complained of. In *Rogers v. City of Omaha,* 76 Neb. 187, it was said: "There is a clear distinction between contracts outside of the powers conferred upon municipal corporations and contracts within the general scope of the powers conferred, but which have been irregularly exer-

cised. Contracts falling entirely outside of the powers delegated to the corporation are absolutely null and void, and no right of action against the corporation can be founded upon them. The rule with reference to the liability of the corporation on contracts within the general scope of the powers granted, but which have been irregularly exercised, is well stated in 2 Dillon, Municipal Corporations (4th ed.), sec. 936, as follows: 'A municipal corporation, as against persons who have acted in good faith and parted with value for its benefit, cannot * * * set up mere irregularities in the exercise of power conferred, as, for example, its failure to make publication in all of the required newspapers of a resolution involving the expenditure of moneys.' "

The action of the defendants in this case was not *ultra vires* in the proper sense of that term, and we are of opinion that the city would be estopped to set up the irregularities complained of as a defense to an action brought against it by the employees to recover the value of their services. This principle seems to have been recognized in *Clark v. Saline County*, 9 Neb. 516, and *Grand Island Gas Co. v. West*, 28 Neb. 852. *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, was a case where the city entered into a void contract with the land company to pay certain hydrant rentals. Water was furnished the city according to the contract, and in a suit to recover the value thereof it was said: "Where a municipal corporation receives and retains substantial benefits under a contract which it was authorized to make, but which was void because irregularly executed, it is liable in an action brought to recover the reasonable value of the benefits received." To the same effect is the case of *Ward v. Town of Forest Grove*, 20 Or. 355, 25 Pac. 1020. The claim in that case was one made by a physician for attending persons afflicted with smallpox. The power to employ a physician was restricted to an employment by ordinance only. The physician was employed by resolution. The court said: "The plaintiff rendered the services at the request of such committee,

with full knowledge and consent of the town authorities, and the defendant, having received the benefit of his services, should compensate him therefor." In *Shepard v. Esterling, supra,* which is the case most relied on by the plaintiff to support his contention, it was said: "The services were undoubtedly extra-official; they were outside of and beyond the duties which the law imposed upon the defendant as judge of the county court; he could not have been compelled to perform them; they might have been performed by any one employed for the purpose. The county got the benefit of Esterling's labor, and it is plain, according to equity and good conscience, that it should render an equivalent therefor.  *  *  *  The method by which the county board undertook to compensate the defendant for his services was, of course, irregular, but it worked no real injury to the plaintiff or any other taxpayer of the county. It is not claimed that the amount allowed the defendant was excessive, or that a less amount would have been allowed if the usual procedure had been followed. The plaintiff is not entitled to any relief, either in law or in equity, and hence the trial court did not err in dismissing the action."

From the foregoing authorities it seems clear that the city in this case could not have successfully defended an action by the employees to obtain payment for the services it is shown they had performed, and it follows that, having paid for such services, it cannot maintain an action to recover back such payment. It seems equally clear that, before a taxpayer can maintain an equitable action to recover money expended by the officers of a municipality, it must appear that the city itself could have maintained such an action in the first instance. And so it may be said that the plaintiff's suit is without equity, and he was not entitled to a judgment against the defendants.

Again, the trial court found, and it appears rightly so, that the plaintiff had an opportunity to appeal from the allowance of the claims on which the money sought to be recovered was disbursed. Having failed to prosecute an

appeal and thus avail himself of his remedy at law, the plaintiff was not entitled to maintain this action.

So we are of opinion that our former decision, by which the judgment of the trial court was affirmed, was right, and it is adhered to.

AFFIRMED.