ED PEDERSEN, APELLANT, v. WESTROADS, INC., A NEBRASKA CORPORATION, ET AL., APPELLEES.
202 N. W. 2d 198

Filed November 17, 1972. No. 38446.

August Ross and Daniel G. Dolan, for appellant.

Fraser, Stryker, Marshall & Veach, Herbert M. Fitle,

Frederick A. Brown, Edward M. Stein, James E. Fellows, Allen L. Morrow, Kent N. Whinnery, George S. Selders, Jr., Verne W. Vance, Roger G. Stanway, Richard A. Cerveny, and Thomas F. Dowd, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

Plaintiff, a resident taxpayer, for the benefit of the City of Omaha and on behalf of all taxpayers alleged fraud and breach of covenant on the part of Westroads, Inc., in development of Westroads Shopping Center. Defendants Omaha and Sanitary and Improvement District No. 130 of Douglas County allied themselves with Westroads. The district court at the close of all the evidence rendered judgment for defendants. Plaintiff appeals.

Plaintiff asserts that district No. 130 foisted upon Omaha obligations that Westroads ought to have assumed. He also asserts breach of covenants that were a condition of extraterritorial rezoning by Omaha at Westroads' request. Other assignments of error are resolved against him.

Defendants contend: (1) Plaintiff has no standing to sue; (2) Omaha possessed no power to covenant to curtail exercise of its authority; (3) a consent decree transferring general obligations of district No. 130 on annexation of the land by Omaha barred Omaha from reapportioning special benefits to Westroads' property; and (4) by the consent decree Omaha waived the benefits of the covenants.

In 1959 the land in question was subject to the jurisdiction of Omaha over zoning within 3 miles outside the city boundaries. Rezoning was necessary for the construction of a shopping center, but opposition formed. Neighbors protested and the Omaha planning board disapproved, but the Omaha council recommended reconsideration by the board.

In July 1960 the Omaha council resolved (1) to prepare ordinances for the rezoning that Westroads and the president and majority stockholder, John Wiebe, were requesting, and (2) to require submission of covenants to insure fulfillment of certain representations by Westroads and Wiebe to Omaha.

On October 3, 1960, Westroads and other private parties agreed upon protective covenants for the use and benefit of Omaha. An explanatory provision read: "To secure the requested rezoning . . . (Westroads and Wiebe) represented to . . . Omaha . . . that grade-separated access would be provided without cost to . . . Omaha to eliminate left turns across Dodge Street by vehicular traffic moving into and out from the regional shopping center." The agreement under the subtitle "Covenants" read: "Wiebe and Westroads . . . covenant . . . for the use and benefit of . . . Omaha . . . as follows: . . . e. The regional shopping center . . . may not be opened to the public . . . unless . . . a traffic grade-separated access approved by the Department of Roads of the State of Nebraska has been constructed without cost to . . . Omaha to carry vehicular traffic . . . to and from . . . (the shopping center and parking lot) in such a manner as to eliminate the necessity for left turns across the surface of . . . Dodge Street . . . ."

The two subsequent ordinances effecting the rezoning were targets of litigation. Wiebe there testified that he and Westroads on April 20, 1960, had represented to the Omaha planning director the payment for cost of the interchange and two loops as follows: Wiebe and Westroads would pay the cost approximated at $600,000, less any aid that state government might furnish; and they would also pay construction costs of some public streets. The district court declared the ordinances void, but on appeal we reversed the judgment and directed dismissal of the suit. See Bucholz v. City of Omaha, 174 Neb. 862, 120 N. W. 2d 270 (1963).

In the trial of the present case Wiebe conceded hav-

ing stated in effect to the Omaha council that he and Westroads "would find a way to build it free of cost to the City."

To meet the requirement that only public entities were eligible for financial aid from the State, lawyers advised Wiebe to petition the district court for formation of defendant district No. 130. To qualify four representatives of Wiebe Enterprises, Wiebe caused Westroads to convey 1,000 square feet of the land to each of the four. Westroads possessed options to repurchase. The district was formed, and the engineer of Westroads was engaged as engineer of the district. General and special benefits were apportioned after a hearing on a date not expressly stated in the record. The district did not notify Omaha of the hearing, and we assume that a statute required such notification. See, former § 31-749, R. R. S. 1943, as amended by Laws 1961, c. 142, § 7, p. 415, Laws 1965, c. 157, § 1, p. 504, and Laws 1967, c. 190, § 1, p. 524.

The designs for the interchange street improvements, and the two loops in the Bucholz case were approved in substance by Omaha and the State. The district's share of the cost of construction, $230,992.66, was assessed as general benefits by the district. Special assessments out of $1,152,223.20, the cost of all improvements that the district made, totaled only $137,465.59.

The district in June 1968 petitioned the district court for approval of a bond issue of $1,600,000, and it duly notified Omaha of the petition. In June the court in a default decree approved the issue and confirmed all proceedings relating to the validity of the bonds.

Effective May 15, 1969, an Omaha ordinance annexed the land of Westroads, and in June the district court with consent of Omaha decreed transfer of the assets and liabilities of district No. 130 to Omaha. No one appealed from the decree. No one brought an action within 30 days after May 15, as required by section 31-764, R. R. S. 1943, relating to the accounting by the district

trustees. Omaha thus assumed all general obligations which included the item of $230,992.66.

The operation of sanitary and improvement districts under legislation then in force has been criticized. See Comments, 5 Creighton L. Rev. 269 (1971-72). Criticism is one thing, fraud, another. The proceedings concerning the proposed bond issue did not deceive Omaha. Upon dissolution of district No. 130 Omaha was bound by all findings, orders, and assessments made by the district to the same extent the district was bound. § 31-763, R. R. S. 1943. Statutory provisions may cut across issue preclusion at common law. Lost Creek Drainage Dist. v. Elsam, 188 Neb. 705, 199 N. W. 2d 387 (1972). A similar rule applies to claim preclusion. Vestal, Res Judicata/Preclusion, V-504 (1969). Furthermore, an Omahan as such has no derivative right greater than the right Omaha possesses. See Cathers v. Moores, on rehearing, 78 Neb. 17, 113 N. W. 119 (1907). Plaintiff's claim of fraud is not well taken.

The representations by Wiebe and Westroads were made in contemplation of annexation. Omaha would not have been otherwise subject to liability for the project. The written covenants are ambiguous, and we interpret them in conformity with the representations outside the document.

On the issue of standing, no statute expressly authorizes a resident taxpayer to litigate an "affirmative" claim on behalf of Omaha. A derivative "defense" is authorized. See, § 14-810, R. R. S. 1943; Lynch v. City of Omaha, 153 Neb. 147, 43 N. W. 2d 589 (1950). Reasons for allowing derivative "defenses" but not "affirmative" claims were given in Cathers v. Moores, 78 Neb. 13, 110 N. W. 689 (1907), but on rehearing, *supra*, the opinion was modified. The latter without reference to any statutory provision stated: " '. . . If a taxpayer, to avoid the burdens of needless taxation, may sue to prevent public officers from squandering public money, there is, it seems to us, no good reason why he may not

also commence and prosecute to judgment an equitable action for the enforcement of a corporate claim which the officers of the corporation have refused to enforce. . . .' ' "

Cathers was decided prior to the enactment in 1921 of what is now section 14-810, R. R. S. 1943. In respect to the City of Lincoln the Legislature once expressly authorized affirmative derivative claims by taxpayers, but it subsequently repealed the provision so as to authorize only derivative defenses. See Consentino v. Carver-Greenfield Corp., 433 F. 2d 1274, at 1277, n. 3 (8th Cir., 1970).

We conclude that plaintiff's claim comes within the spirit of section 14-810, R. R. S. 1943, although it is not technically referable to threatened expenditure of public funds. Cf. Taxpayers' League v. Wightman, 139 Neb. 212, 296 N. W. 886 (1941). Plaintiff possesses standing.

The argument whether Omaha had power to covenant to curtail exercise of its authority is moot, for Omaha was simply a third party beneficiary. The effect of the protective covenant agreement was to give some further assurance to Omaha and the adjoining landowners that the applicants had made the representations in good faith. Bucholz v. City of Omaha, 174 Neb. 862, at 874, 120 N. W. 2d 270 (1963), cited in the following articles: Shapiro, "The Case for Conditional Zoning," 41 Temple L. Q. 267 (1968); Comments, 12 U. C. L. A. L. Rev. 897 (1965).

Defendants correctly assert that the consent decree in the annexation proceeding prevents Omaha from reapportioning benefits to Westroads' property. The decree did not constitute, however, a waiver by Omaha of the benefit of the private covenants.

The argument on waiver touches the question of claim preclusion by the consent decree. The annexation proceeding was special, and the beneficiary rights of Omaha did not arise out of the transaction or subject of the action on which the annexation proceeding rested;

the provision for cross-claims in section 25-813, R. S. Supp., 1972, did not apply. That aspect of claim preclusion was inoperative, and Omaha ought to recover judgment against Westroads in the present case.

The judgment in favor of Sanitary and Improvement District No. 130 is affirmed. The judgment in favor of the other defendants is reversed and the cause remanded with directions to render judgment for Omaha against Westroads in the amount of $230,992.66 on plaintiff's derivative claim.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.