HIEGEL FARMS CORPORATION, APPELLANT, V. KYLE CASSELMAN ET AL., APPELLEES.

349 N.W.2d 382

Filed June 1, 1984. No. 83-463.

R. L. Gilbert, for appellant.

Christine J. Law of Atkins, Ferguson, Zimmerman, Carney & Law, and John F. Simmons of Wright, Simmons & Selzer, for appellees.

BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The plaintiff, Hiegel Farms Corporation, appeals the dismissal of its petition to obtain an injunction to remove an embankment which is alleged to obstruct the natural flow of surface waters. The district court determined that although both the plaintiff's and defendants' lands are within a watershed area, there is no natural depression, draw, swale, or watercourse upon either of the premises.

The trial court also found that the accumulation of floodwaters from the land of the plaintiff was caused primarily by a low spot in the southeast corner of the plaintiff's land, and additionally by the concentration and funneling of floodwaters by a concrete irrigation lateral running east and southeast on the plaintiff's land. We affirm.

Plaintiff, Hiegel Farms Corporation, owns a tract of land described as the southeast quarter of Section 18, Township 23 North, Range 55 West, of the 6th P.M., in Scotts Bluff County, Nebraska. The defendants Casselman are the personal representatives, trustees, and heirs of Kyle Casselman, and own the land directly to the south of the plaintiffs, the northeast quarter of Section 19 in the same area.

On the common boundary line between the parties' property is a county road running east and west, while to the east is a hard-surfaced road running north and south. In its natural state the water generally flows from the northwest to the southeast. Four culverts pass water from the plaintiff's farm under the county road between the plaintiff's and defendants' property. One culvert is part of the Pathfinder Irrigation District lateral on the far west edge of the properties involved. Two culverts are in the middle of the property and drain excess runoff water, while the fourth lies at the southeast corner of the plaintiff's farm and runs north and south along the west side of the intersection of the county road and the oiled road.

There is a borrow pit on the south side of the county road. The dikes or embankment complained of are the south and west banks of the borrow pits located on the defendants' land. The defendants raised the level of the south bank in 1970 and again in 1979 by rolling up excess dirt left over from the beet harvest. Plaintiff alleges the higher embankment caused increased ponding in the area directly north of the middle two culverts.

Although there is some conflict in the evidence, the record shows the plaintiff's land slopes slightly downward, running generally north and south near the right center of the tract. Surface water drains south toward the defendants' land, where it eventually collects in a depression generally at the southeast corner of the plaintiff's land. The water gradually flows through the culverts under the county road and along the drainage ditches or borrow pits adjacent to the defendants' land.

Since 1977, when the plaintiff took possession of the property, it has added an underground tile drain and changed an irrigation lateral from an earthen ditch to a concrete ditch. In 1979, after the dike was last built up, an impoundment of water would be created on the plaintiff's land after heavy rains, inun-

dating an area of 4 to 5 acres for a period of 12 to 24 hours, resulting in the damaging of soil and crops.

In an action in equity we review the matter de novo without reference to the findings of fact made by the trial court, but where the testimony or evidence is in irreconcilable conflict, we take into consideration that the trial court observed the witnesses. *Grint v. Hart*, 216 Neb. 406, 343 N.W.2d 921 (1984). In a review de novo this court will also give weight to the fact that an inspection of the premises was made by the trial court, where such inspection was given consideration by the court in its decision and judgment. *Kluck v. Mentzer, ante* p. 8, 347 N.W.2d 306 (1984).

It is the general rule that where surface waters concentrate and gather in volume, so as to lose their character as diffused surface waters and flow into a natural depression, draw, swale, or other natural drainageway, the flow may not be arrested or interfered with to the injury of neighboring proprietors. *Nichol v. Yocum*, 173 Neb. 298, 113 N.W.2d 195 (1962).

In *Eunice Harrington Investments, Ltd. v. Wallace*, 207 Neb. 373, 299 N.W.2d 174 (1980), we applied the rule that a lower landowner who builds a structure across a natural drainageway must provide for the natural passage through such obstruction of all the water which reasonably may be anticipated to drain therein.

The first issue before the court is whether a natural drainageway existed across the plaintiff's land and onto the defendants' property which the defendants had unreasonably obstructed. In resolving the conflicts in the evidence surrounding this question, we will give proper weight to the fact that the trial court saw and heard the witnesses who testified, and twice viewed the premises, once when ponding of water was present on the plaintiff's land.

It is uncontested that the land in issue, shown on a contour map, consists of approximately 2,700 acres,

and the areas 1 mile to the east and west of the plaintiff's ground are 50 to 75 feet higher. Although the contour map reveals a wide, slightly depressed area, there is no evidence to show a well-defined channel or course cut in the soil. In fact, Meredith C. Schaff, a consulting civil engineer, testified that "there were no natural drainage ways or water courses, eroded areas that would prescribe like a creek or anything that would collect this water. Basically, the bulk of the water flows over land." The alleged drainageway is described as 900 feet wide and 1 foot deep.

From previous testimony it had been shown that a certain amount of water ponded on the plaintiff's land before the embankments were built up. Even the plaintiff admits the area was low and water gathered in the southeast corner of Section 18. Although culverts were present to drain the runoff water, some of this ponding was attributed to the buildup of the county road in 1970. As a matter of fact, the evidence disclosed that the road had a higher elevation than the so-called dike. Witnesses for both parties testified that water would sometimes pond on the plaintiff's land to an extent sufficient to flow over the top of the raised area before and after the county road was built up.

Further evidence presented at trial indicated a concentration and funneling of floodwater occurred as a result of having lined with concrete the previous earthen irrigation lateral. Rinard Goss, an area farmer who previously farmed the land of the plaintiff, stated the concrete ditch resulted in more water draining away faster from the north part of plaintiff's field.

Upon our review of the entire record we find that the trial court was correct in its findings of fact and conclusions of law. The de novo review of the record showed occasional surface water caused by heavy rain would collect in low areas on plaintiff's land north of the county road. Two culverts drained

this area. The amount of ponding in the low area has increased somewhat since 1977, but due to the plaintiff's restructuring of its own land, it has caused this increase in ponding.

The plaintiff has not proven that a natural depression, draw, swale, or drainageway exists on the premises. Plaintiff not having proven a natural waterway exists, we do not have to determine whether the embankment on the defendants' land blocked the natural passageway of water to the injury of the plaintiff.

The judgment of the trial court is affirmed.

AFFIRMED.

KRIVOSHA, C.J., participating on briefs.