LAURENCE A. LANPHIER, JR., APPELLANT, V. OMAHA PUBLIC
POWER DISTRICT, A PUBLIC CORPORATION, AND CITY OF OMAHA, A
MUNICIPAL CORPORATION, APPELLEES.

417 N.W.2d 17

Filed December 24, 1987.    No. 86-022.

David J. Lanphier and Robert M. Gonderinger of McGill,
Koley, Parsonage & Lanphier, P.C., for appellant.

Stephen G. Olson and Mary Kay Pryor of Fraser, Stryker,
Veach, Vaughn, Meusey, Olson, Boyer & Bloch, P.C., for
appellee Omaha Public Power District.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN,
and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Plaintiff, a resident and taxpayer of the City of Omaha, filed
this action "for himself and on behalf of all other persons
similarly situated . . . and for the benefit of the City" as a class
action, against defendants, City of Omaha and Omaha Public
Power District. The petition sought an injunction, an
accounting, and the return of moneys paid by the city to the
district for streetlighting services rendered to the city for the
period since January 31, 1975, up to the filing of the petition on
October 27, 1978. Plaintiff sought relief because during that

period there was not a contract between the city and the district for such services. Separate demurrers of the city and the district were overruled, but the court found that while a cause of action was stated, the petition did not "justify a class action and the matter will proceed as a derivative suit under Section 14-810 Nebraska statutes." Apparently, without objection from any of the parties, the case did so proceed.

After separate answers filed by defendants, the matter was tried to the court. After trial, judgment was entered in favor of defendants. Plaintiff timely appealed and has assigned two errors: (1) that the trial court erred "in placing the burden of proof on Plaintiff to establish the fair and reasonable value of the street lighting services received by the City of Omaha"; and (2) that the trial court erred in "its finding of the fair and reasonable value of streetlight maintenance services received by the City of Omaha." We affirm.

In his petition, plaintiff alleged that the payments made by the City of Omaha to the district after January 31, 1975, for streetlighting services were unlawful expenditures of public funds in violation of § 5.17 of the Omaha home rule charter and Neb. Rev. Stat. § 14-108 (Reissue 1983), primarily because the Omaha City Council had not approved any contract between the city and the district for such services. Plaintiff further pled that the payments made by the city to the district were in excess of the fair and reasonable value of the electrical service, equipment, and maintenance furnished by the district for streetlighting. In addition to injunctive relief, the plaintiff requested an accounting from the district for payments received by the district from the city in excess of the fair and reasonable value of the streetlighting services provided by the district.

In its answer, the district alleged that the district and the city had continued their contractual relationship from 1975 through 1979, until a new contract was entered into, and that the district was entitled to the fair and reasonable value of the services provided to the city. In its answer, the city alleged that its contractual relationship with the district extended beyond January 31, 1975, and that the payments made by the city to the district were fair and reasonable for the services provided by the district.

The record shows that the district is a public service corporation furnishing electric power and light, since 1946, to a 13-county area in eastern Nebraska, including Omaha. Among the services furnished to Omaha and various smaller towns in the district's service area, and to various sanitary and improvement districts, are streetlighting services.

Pursuant to Neb. Rev. Stat. § 70-655 (Reissue 1976), the board of directors of the district is required to establish the rates charged by the district. These rates are required by statute to be fair and reasonable and are subject to adjustment in order that the benefits of a successful and profitable operation are conferred upon the consumer. Customarily, the district and the City of Omaha entered into contracts for streetlighting for a 4-year period. These contracts are required to be approved by ordinance, pursuant to Omaha home rule charter § 5.17 and § 14-108.

On February 9, 1971, the Omaha City Council approved a contract with the district for the furnishing of electrical service, equipment, and maintenance for streetlighting in the city, in accordance with the city charter and the statute. This contract expired by its terms on January 31, 1975. The city and the district were unable to agree on a new contract, but after the expiration of the contract the district continued to provide services to the city, and the city continued to pay for those services, until an agreement was reached on a new contract to become effective on January 1, 1980.

During the period between January 31, 1975, and January 1, 1980, the city continued to pay the district on a monthly basis, as billed by the district, without protest. During this time, the city and the district continued the contractual operating procedures set out in the earlier contract. The city requested the district to install a total of 4,141 streetlights during the period from 1975 to May of 1979, and the district installed the lights and furnished the capital for the cost of installation.

An official of the district testified that the district considered shutting off the streetlight service, but did not do so because of concerns about "the safety of the situation." After the expiration of the 1971 contract, there was discussion between the city and the district concerning the level of the rates.

In April of 1977, the board of directors of the district formed a citizens' advisory committee to study the district's rates and policies. In 1978, after studying the aspects of rate structure and design, the committee found that the rate of return on the streetlighting services was lower than the rate of return of the district as a whole and that the rates charged by the district compared favorably to the rates charged by other utility companies in the surrounding area.

In 1978, the city commissioned R.W. Beck and Associates, a consulting firm, to study the reasonableness of the rates charged by the district for the streetlighting services. The independent consultant concluded that (1) the district's cost of service methodology is in accordance with generally accepted utility practices; (2) the rate of return on the rate base for the streetlighting class, and for streetlighting in particular, was below the district's system average rate of return; (3) the district's accounting methods were in accordance with generally accepted utility practices; and (4) the rates charged by the district for the streetlighting services are similar to those charged by other utilities in the region.

At the trial, plaintiff's witness, an associate professor of decision sciences at the University of Nebraska-Omaha, testified that, in his opinion, the city had overpaid the district in the amount of $1,593,313 during the period of time from February 1, 1975, to December 1, 1979. He calculated that overpayment based on consideration of only the maintenance charges within the overall rate. He testified the maintenance charges for the streetlighting services were excessive. His conclusions were based on rates obtained from a firm which provided maintenance services only, and not full streetlighting services for municipalities. He compared these maintenance rates to the rates charged by the district. The study did not take into account the district's methods of allocating maintenance charges and did not utilize cost figures of the district.

The division manager for customer service operations for the district testified that during the period of time between January 31, 1975, and December 31, 1979, the district had a generally negative rate of return on its streetlight operations, and as this was the lowest rate of return of any classification compared to

the rates of return for the total district. The streetlighting class was the only class of customers serviced by the district which had a negative rate of return. He further testified that the amount charged by the district did not cover the cost of providing the service, and the purpose of the increase in the rates for streetlighting services in the 1970s was an attempt to bring the streetlight rate of return in accord with the rates of return on the other classes of customers serviced by the district.

In his first assignment of error plaintiff alleges that the district court erred in placing the burden of proof on the plaintiff to establish the fair and reasonable value of the streetlighting services received by the city.

In its order dismissing plaintiff's petition, the district court found that "the Plaintiff has failed to convince this Court by a preponderance of the evidence of the rightness of its position . . . ." We determine that this was a general statement which did not amount to a specific finding on any question of fact, and cannot be said to be any assignment of the burden of proof by the trial court.

In addition, the disposition of this assignment of error does not control this court's decision because, as stated by plaintiff, "this case is entitled to de novo review without reference to the findings of fact made by the trial court." Brief for Appellant at 16. Since plaintiff's action is a derivative action seeking an accounting, an injunction, and the return of moneys expended by the city, it is an equitable action. *Darnell v. City of Broken Bow*, 139 Neb. 844, 299 N.W. 274 (1941). In an equitable action, this court reviews the facts de novo without reference to the findings of fact made by the trial court, and reaches an independent conclusion. Neb. Rev. Stat. § 25-1925 (Reissue 1979); *Hiegel Farms Corp. v. Casselman*, 217 Neb. 506, 349 N.W.2d 382 (1984). Plaintiff's first assignment of error is without merit.

In his second assignment of error, plaintiff alleges that the district court erred in its finding of the fair and reasonable value of streetlight maintenance services received by the City of Omaha.

In our de novo review, we first note that plaintiff, in pursuing this derivative action, has no rights greater than the

city itself possesses. *Pederson v. Westroads*, 189 Neb. 236, 202 N.W.2d 198 (1972). See, also, *Nielsen v. SID No. 229*, 208 Neb. 542, 304 N.W.2d 385 (1981); *Cathers v. Moores*, 78 Neb. 17, 113 N.W. 119 (1907).

The case presented, then, is one in which we must determine whether the city could have recovered payments it had made to the district, where statutes forbade this payment of such moneys by the city, since an appropriate ordinance had not been adopted. This court has held that where the action of a public organization is illegal and void not because of a lack of power but because of a failure to properly exercise existing power, the organization is bound under the theories of quantum meruit. *Fulk v. School District*, 155 Neb. 630, 53 N.W.2d 56 (1952); *Cathers v. Moores, supra.* The remedy of the other party to such an agreement (the district in this case) is to recover in quantum meruit from the public organization (the city in this case). *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, 77 N.W. 349 (1898). Where the provided services are illegal and prohibited, however, there can be no quantum meruit recovery. *Davy v. School Dist. of Columbus*, 192 Neb. 468, 222 N.W.2d 562 (1974); *Arthur v. Trindel*, 168 Neb. 429, 96 N.W.2d 208 (1959).

It is undisputed that the city had the power to contract with the district, pursuant to § 14-108 and Omaha home rule charter § 5.17. The city did not properly exercise that power because the city council did not approve a contract with the district, nor did it enact an ordinance for the streetlighting contract. The services were furnished. Under these circumstances, the district is entitled to a quantum meruit recovery.

In determining whether quantum meruit applies, the initial determination which must be made is whether the district has conferred a benefit on the city. We find that the district did confer a benefit on the city by continuing to furnish streetlighting service. A witness for the district testified as to concerns about safety. Plaintiff does not allege that no benefit was conferred and, indeed, states in his reply brief at 5, "Plaintiff admits OPPD is entitled to retain some amount under a quantum meruit theory."

The difficulty in this case is in determining the amount to

which the district is entitled. Plaintiff's position is that the amount due under a quantum meruit theory must be determined to be fair and reasonable "from the standpoint of the benefits received by the City." Reply Brief for Appellant at 5.

In past cases, cited by plaintiff, we have made general statements to the effect that in such cases, the party furnishing services and materials to a municipal organization under a contract not properly authorized is entitled to recover "the reasonable value of the benefits received [by the public organization]," *Gee v. City of Sutton*, 149 Neb. 603, 609, 31 N.W.2d 747, 751 (1948); " '[t]he reasonable value of the benefits received,' " *Cathers v. Moores, supra* at 22, 113 N.W. at 121 (1907); and " 'the value of what the defendant has actually received the benefit of,' " *Lincoln Land Co. v. Village of Grant, supra* at 77, 77 N.W. at 351.

The district, on the other hand, contends that, on this issue, it is entitled to the reasonable value of the services which it provided, calculated from the point of view of the party furnishing the services. The district cites Nebraska cases supporting that contention, and, to point up the confusion, some of the same cases are cited by plaintiff.

The question presented, then, is, Shall the amount due a party furnishing services under a quantum meruit theory be calculated based on the reasonable value of benefit received by the party accepting the services, or on the reasonable value of the services furnished?

In the case before us, between a public organization and a public power district, we hold that the amount to which the district is entitled is the fair and reasonable value of the streetlighting services it furnished to the city. When the cases relied on by plaintiff are examined, those cases either support that theory of recovery or do not dispose of the issue.

In *Gee v. City of Sutton, supra*, while we did set out the statement quoted above, we also said at 608, 31 N.W.2d at 750, "The sole issue involved in this appeal is the reasonable value of the street repairs and surfacing done by the partnership for the city." The evidence considered in deciding the case consisted of the partnership's costs (reduced by the elimination of profit—a

matter discussed below). There is no discussion of the "benefits received." In the *Gee* case, we held that the trial court had properly determined the reasonable value of the services rendered.

In *Cathers v. Moores*, 78 Neb. 17, 113 N.W. 119 (1907), we held that the plaintiff, who was prosecuting a derivative action in the same fashion as plaintiff in the instant case, could not prevail because the city could not have prevailed and because the plaintiff had not appealed from the allowance of the claims on which the money sought to be received was disbursed. The amount of the recovery was not an issue in that case, and the court's remarks concerning the amount were dicta.

In *Lincoln Land Co. v. Village of Grant*, 57 Neb. 70, 77 N.W. 349 (1898), plaintiff's petition seeking recovery of $900 for rental of 15 water hydrants was dismissed on the defendant's demurrer, and, on appeal, the cause was remanded for trial. Any discussion of the theory of damages was dicta, but we note we cited with approval cases from other jurisdictions holding a city should pay the reasonable value of the services received, and other cases holding that a city should pay the amount of the benefit received. The *Lincoln Land* holding is not dispositive of this issue.

We stated in *Hancock v. Parks*, 172 Neb. 442, 451, 110 N.W.2d 69, 74 (1961), " 'An action based on quantum meruit . . . is grounded upon an implied promise to pay the reasonable value thereof.' " In *Ruzicka v. Petersen*, 213 Neb. 642, 645, 330 N.W.2d 913, 914 (1983), we said, "Where services are furnished to a party and knowingly accepted by him, the law implies a promise on his part to pay the reasonable value of the services. *Denton v. Nelson*, 205 Neb. 833, 290 N.W.2d 462 (1980)." Those rules should be applied to this action between a municipal organization and a public power district. We hold that, under a quantum meruit theory, the defendant city owed to defendant district the reasonable value of the services as rendered by the district, rather than an amount equal to the benefit received by the city.

This is not to say that, in some cases, either of the parties might wish to proceed on the theory that the measure of recovery might be the amount of the benefits received. To

attempt to proceed on that theory in this case would be to enter into the realm of speculation. What is it worth to have lighted streets rather than dark streets? Were any crimes averted by light as opposed to darkness, or any vehicle collisions avoided? That problem is noted in the Restatement (Second) of Contracts § 371 at 204 (1981), where the following example is set out:

> A, a surgeon, contracts to perform a series of emergency operations on B for $3,000. A does the first operation, saving B's life, which can be valued in view of B's life expectancy at $1,000,000. The market price to have an equally competent surgeon do the first operation is $1,800. A's restitution interest is equal to the benefit conferred on B. That benefit is measured by the reasonable value to B of A's services in terms of the $1,800 that it would have cost B to engage a similar surgeon to do the operation regardless of the rule on which restitution is based.

The proper measure of recovery in this case is the reasonable value of the services rendered by the district to the city. The district adduced evidence that its rates for streetlighting were fair and reasonable. The city consented to such rates by paying them.

Although the plaintiff produced evidence that the maintenance charges within the district's rates for streetlighting services may have been higher than the maintenance rate charges of companies operating a maintenance business only, the plaintiff's witness did not consider the district's overall operation and did not attempt to make any allocation of costs. The witness considered only one segment of a rate set by a public power district. We do not find his testimony controlling on the issue of fairness and reasonableness.

There is evidence before us that the district's rates were comparable to rates charged for such services elsewhere. Such evidence is competent evidence tending to show value. *Sorensen Constr. Co. v. Broyhill*, 165 Neb. 397, 85 N.W.2d 898 (1957). The evidence also showed that the rates charged during the period in question were promptly paid, without protest, and thus operated as an agreed price. We have held that a price

agreed on by parties is competent evidence of the reasonable value of services. *Koehler v. Boyler*, 190 Neb. 143, 206 N.W.2d 646 (1973).

We find that the district sustained its burden of proof in determining the fair and reasonable value of the services rendered to the city. Such proof would have entitled the district to a quantum meruit recovery and, in this case, operates as a defense to plaintiff's petition seeking repayment.

We note that the streetlighting contracts before 1975 and after 1979 each contained a clause that the district rates were subject to change by the district's board of directors. Thus, it is clear that the district, both before and after the relevant time period in which it was operating without a contract, had the ability to raise the rates without the city's consent, pursuant to § 70-655.

We further note that, in *Gee v. Village of Sutton*, 149 Neb. 603, 609, 31 N.W.2d 747, 751 (1948), we said, "Generally, [in quantum meruit cases] the courts will not allow profits which might have been obtained if the contract had been legal and valid . . . ." The question of profit on the rendering of services is not a problem in this case. First of all, the case presents a dispute between a municipal corporation and a public power district. There is no contention or evidence showing that the district was operated to make a profit as such. Second, the district's evidence is not disputed insofar as that evidence shows the streetlighting services were furnished at a level resulting in a negative rate of return. There was no profit. In addition, the streetlighting rates were within the rates which the board of directors had the authority to establish so that the district could be operated in a successful manner. § 70-655. See, also, *City of O'Neill v. Consumers Public Power Dist.*, 179 Neb. 773, 140 N.W.2d 644 (1966).

For the reasons set out above, the judgment of the trial court is affirmed.

AFFIRMED.